[No. 18379.    Department Two.—November 23, 1894.]

In re Difference and Controversy between E. M. DERBY & CO., Appellant, and THE CITY OF MODESTO et al., Respondents.

104   515
,107   476
104   515
117   364
104   515
136    5
104   515
142   701
104   515
6144   393
104   515
146   764

Municipal Corporations—Validity of Negotiable Bonds—Bona Fide Purchasers.—Where a city has unquestionable power to issue negotiable bonds, the proper steps being first taken, *bona fide* purchasers of such bonds before maturity take them free from all defenses based upon mere irregularities in the issue of the bonds, or upon noncompliance with preliminary requirements, not going to the question of power to issue them.

Id.—Validity of Ordinances for Issue of Bonds—Time of Passage—Special Statute—Municipal Government Act.—Ordinances passed under the act of 1889, with reference to the issue of municipal bonds for the construction of a system of water works and sewers, are specially governed by that act as amended in 1891, and may be passed on the day upon which they were introduced, without reference to the general provisions of section 861 of the Municipal Government Act, which provides that "no ordinance and no resolution granting any franchise for any purpose shall be passed by the board of trustees on the day of its introduction, nor within five days thereafter, nor at any other than a regular meeting."

Id.—Publication of Preliminary Ordinance.—Where the statute requires the publication of a preliminary ordinance determining that the public interests or necessity demands the construction and completion of a system of water works and sewers for at least two weeks in some newspaper published in the municipality before the passage of the final ordinance calling a special election upon the question of the issuance of bonds for such purpose, a publication of the preliminary ordinance from October 6th to October 19th, both days inclusive, in a daily newspaper, is a sufficient compliance with the statute, and the final ordinance may be passed at a regular meeting held October 20th.

Id.—Definition of "Week"—Publication for Two Weeks.—A week is defined by the code to be a period of seven consecutive days, and an ordinance published on fourteen consecutive days prior to the passage of a second ordinance is published for at least two weeks prior thereto.

Id.—Definition of "Day"—Fractions of a Day.—A day is the period of time between any midnight and the midnight following, and fractions of a day are not regarded in law, unless justice requires it, or where the order of successive events is to be ascertained.

Id.—Computation of Time—Inclusion of First Day's Publication.—Where there is no date or event suggesting the exclusion of the first day's publication in the computation of time it is to be included, and the rule stated in section 12 of the Code of Civil Procedure does not apply in such case.

Id.—Change of Number in Denomination of Bonds—Power of Board. Where the ordinance authorizing the publication of notice of a

special election stated the number of bonds proposed to be issued as fifty, of the denomination of five hundred dollars each, a subsequent ordinance after the vote for the issuance of the bonds, changing the number to forty bonds of five hundred dollars each, and twenty bonds of two hundred and fifty dollars each, does not affect the validity of the bonds, although the statute provides that the ordinance shall state the number and character of the bonds to be issued.

ID.—DIRECTORY STATUTE.—Those directions of a statute which are not of the essence of the thing to be done, and by the failure to obey which the rights of those interested will not be prejudiced, are not to be regarded as mandatory, but directory only.

ID.—SEMI-ANNUAL PAYMENT OF INTEREST.—Where the regular interest affixed upon the bonds does not exceed the statutory limit the bonds are not invalidated for the reason that they provide for the semi-annual payment of interest.

ID.—AMOUNT OF ANNUAL TAX LEVY.—Where the ordinance calling the election contains all the *data* required for the purpose of calculating the precise amount of the tax levied for each year it is sufficiently certain, being capable of being rendered certain by calculation.

ID.—INJUNCTION AGAINST TAX LEVY—BONA FIDE PURCHASERS—RIGHT OF TAXPAYERS.—Taxpayers cannot enjoin the levy of a tax to meet the annual installment of principal and interest due upon municipal bonds in the hands of *bona fide* purchasers, by reasons of objections to matters of mere irregularity, which do not affect the validity of the bonds.

APPEAL from a judgment of the Superior Court of Stanislaus County.

The facts are stated in the opinion.

*R. M. Fitzgerald,* and *Carl H. Abbott,* for Appellants.

*John Yule,* and *C. C. Wright,* for Respondents.

HAYNES, C.—E. M. Derby & Co., a corporation and taxpayer of the city of Modesto, claiming that certain bonds issued by said city to the aggregate amount of eighty-five thousand dollars, to be used for the construction of a system of water works and sewers, are illegal and void, and because thereof that no tax can be lawfully levied or collected to pay the same, agreed with the city of Modesto, the board of trustees of said city, the members of said board, the treasurer of said city and the Oakland Bank of Savings, a corporation, which was the original purchaser and holder of said bonds, to submit the question of the validity of said bonds to the supe-

rior court of Stanislaus county, upon an agreed case under the provisions of section 1138 of the Code of Civil Procedure.

Judgment was given in said court against appellant, from which it appeals upon said agreed statement.

Before considering the points specially made by appellant it should be observed that this contention was not made by appellant prior to the sale and delivery of the bonds to the Oakland Bank of Savings; but these questions are now presented as between the taxpayers of the city of Modesto and the holder of the bonds after their purchase and after the city has received the full purchase price.    The *power* of the city to issue the bonds, the proper steps being first taken, is not and cannot be questioned; and, if the bonds are valid in the hands of the purchaser, the duty of the city to levy the tax required for the payment of the interest and each installment of the principal sum cannot be questioned, and the obligation of the taxpayer to pay the tax levied therefor is perfect.

The bid of the Oakland Bank of Savings for the purchase of said bonds was accepted January 19, 1893, and the full purchase price thereof was by said bank paid into the city treasury, and the notice and protest of appellant was not served until March 15, 1894, the first installment of the principal and the interest having been paid by the city in the preceding December.   Nor is it asserted by appellant in its said notice, nor does it appear from the statement, that the purchaser of the said bonds had any notice of the alleged defects in the proceedings upon which the issue of said bonds was based.

"The following doctrines are too well settled to be any longer open to question.   A *bona fide* purchaser of negotiable paper for value, before maturity, takes it freed from all infirmities in its origin, unless it is absolutely void for want of power in the maker to issue it, or its circulation is by law prohibited.   Municipal bonds payable to bearer are subject to the same rules as other

negotiable paper." (Dillon on Municipal Corporations, 4th ed., sec. 513, and cases cited in notes.)

The same learned author in succeeding sections, referring to the course of decisions in the supreme court of the United States, says: " It has rejected, when necessary to protect the *bona fide* holders of such securities, narrow and rigid constructions of statutes authorizing the creation of such debts. Against such holders it has given no favor for defenses based upon mere irregularities in the issue of the bonds or upon noncompliance with preliminary requirements, not going to the question of *power* to issue them." (Dillon on Municipal Corporations, sec. 515. See, also, *St. Joseph Township* v. *Rogers*, 16 Wall. 644.)

In the light of the principles enunciated by the foregoing authorities we will now notice the particular defects in the proceedings leading up to the issue of the bonds in the order in which they are stated by counsel for appellant.

1. It is claimed that the several ordinances set out in the statement were each passed by the board of trustees of the city of Modesto on the day they were introduced, whilst it is contended that section 861 of the act of March 13, 1883 (Stats. 1883, p. 269), requires that no ordinance shall be passed on the day of its introduction, or within five days thereafter. So much of said section as is pertinent reads as follows: " No ordinance and no resolution granting any franchise for any purpose shall be passed by the board of trustees on the day of its introduction, nor within five days thereafter, nor at any other than a regular meeting." That the several ordinances above mentioned were passed on the day upon which they were severally introduced is not controverted; and appellant contends that this fact renders the ordinance absolutely void, so that it constitutes no step in the proceedings leading up to the issuance of the bonds. His contention is that the restriction as to time applies to *all* ordinances, and also to those resolutions granting a franchise; whilst respondent contends that the restric-

tion applies only to ordinances and resolutions granting a franchise.   We think, however, it is not necessary to decide between these two constructions.

The city of Modesto is a city of the sixth class, to which said section 861 of the Municipal Government Act applies.   It is claimed by respondent, however, that the proceedings had with reference to the issue of the bonds in question were taken under the act of 1889 (Stats. 1889, p. 399), entitled "An act authorizing the incurring of indebtedness by cities, towns, and municipal corporations incorporated under the laws of this state for the construction of water works, sewers, and all necessary public improvements."   Section 2 of said act was amended in 1891. (Stats. 1891, p. 94.)   That portion of section 2 as amended which is pertinent to the question under consideration is as follows:

" Whenever the legislative branch of any city, town, or municipal corporation shall, by ordinance passed by a vote of two-thirds of all its members, and approved by the executive of said city, town, or municipal corporation, determine that the public interests or necessity demands the acquisition, construction, or completion of any municipal buildings, bridges, water works, water rights, sewers, or other municipal improvements, the cost of which will be too great to be paid out of the ordinary annual income and revenue of the municipality, they may, after the publication of such ordinance for at least two weeks in some newspaper published in said municipality, and at their next regular meeting after such publication or at an adjourned meeting, by ordinance passed by a vote of two-thirds of all its members, and also approved by the said executive, call a special election, and submit to the qualified voters of said city, town, or municipal corporation the proposition for the purpose set forth in the ordinance, and no question other than the incurring of indebtedness for said purpose shall be submitted."

It will be seen that this statute requires the preliminary ordinance to be passed by a vote of two-thirds of

all the members of the board of trustees, and to be approved by the executive, requirements which are not found in section 861 of the Municipal Government Act. The initial ordinance, No. 104, merely declares that the public interest and necessity demand the improvements therein mentioned, and directing that the ordinance shall be published as required by the statute. There could be no object in requiring that such an ordinance should be introduced five days or any other time before its passage. It is itself a mere preliminary ordinance under which no action can be taken toward the accomplishment of the purpose indicated in it, until it has been notified to the people for a period of two weeks. After such publication the board of trustees are authorized to pass another ordinance "at their next regular meeting, or at an adjourned meeting," calling a special election and submitting to the qualified voters of the municipality the proposition set forth in the ordinance. This ordinance "shall recite the objects and purposes for which the indebtedness is proposed to be incurred, the estimated cost of the proposed public improvement, the necessity for such improvement, and that the bonds of the municipality shall issue for the payment of the cost of such improvement as in such ordinance set forth."

As to the second ordinance provided for in the amendment of 1891 it is obvious that no such restriction as that contended for by appellant is imposed, since it is expressly provided that such ordinance may be passed at the next regular meeting after the publication of the first ordinance is completed. This second ordinance calling the election and specifying the amount required to be raised, the amount of the bonds, rate of interest, etc., is the important one; and if it may be passed on the day of its introduction, as is clearly the case, no reason can be conjectured why the preliminary ordinance could not be.

Ordinance No. 111 providing for the issue, sale, and redemption of the bonds, ordinance No. 113 amending No. 111, and No. 115 approving and confirming the

execution of the bonds and the sale thereof to the respondent, the Oakland Bank of Savings, were all proper steps taken by the board in carrying out the expressed will of the voters and authorized under the act of 1891, and were not affected by the supposed restriction in section 861 of the act of 1883.   The purpose of said section 861, so far as it requires ordinances to be introduced at least five days before their passage, is to give time for consideration, with a view to prevent hasty and ill-considered legislation; but the act of 1891 goes far beyond this requirement by providing that the first ordinance, which has no effect whatever unless followed by the other steps required by the statute, must be published for two weeks.   The whole machinery of the act is framed with a special view to the intelligent action of the voters of the municipality in whose hands rests the power to authorize or refuse to authorize the incurring of the proposed indebtedness.   The whole proceeding from beginning to end is a single special proceeding for the accomplishment of a single special purpose, though consisting of a series of acts; while section 861 of the Municipal Government Act relates to the ordinary and general legislation passed for the government of the municipality, if it be true, as appellant contends, that it applies to ordinances other than those granting franchises.

2. Appellant's second point is that ordinance No. 104, determining that the public interest and necessity demanded the construction of a system of water works and sewers, was published only from October 6 to October 19, 1892, both days included, in a daily newspaper, and that such publication was not a compliance with the statute.

The statute of 1891, page 94, requires the publication of such ordinance "for at least two weeks in some newspaper published in such municipality," and requires the second ordinance calling a special election to be passed "after the publication" of the first ordinance "for at least two weeks," and this ordinance was passed at a regular meet-

ing held October 20th. A week is defined by the codes to be a period of seven consecutive days. This ordinance was published on fourteen consecutive days prior to October 20th, the date of the second ordinance. We think this complied with the statute. (*Savings & Loan Society* v. *Thompson,* 32 Cal. 347, 351; *Misch* v. *Mayhew,* 51 Cal. 514; *Hagenmeyer* v. *Mendocino County,* 82 Cal. 217.)

"A day is the period of time between any midnight and the midnight following." (Pol. Code, sec. 3259.) Fractions of a day are not regarded in law unless justice requires it, or where the order of successive events is to be ascertained. In *Bemis* v. *Leonard,* 118 Mass. 502, 19 Am. Rep. 470, it was held that "in computing time from the date, or from the day of the date, or from a certain act or event, the day of the date is to be excluded, unless a different intention is manifested." But here there is no date or event suggesting the exclusion of the first day's publication from the computation, and the cases above cited take this case out of the rule stated in section 12 of the Code of Civil Procedure, which excludes the first day and includes the last; but even under that theory, if the statute required fourteen days' *notice,* and the notice had been served on the 6th, the performance of the act on the 20th would have been regular. The words "at least" in the statute do not restrict the meaning of the expression "published two weeks." They are intended to fix two weeks as the minimum, leaving it in the discretion of the trustees to make a longer publication.

3. Appellant contends that the board had no power to change the number and denomination of the sewer bonds.

The ordinance authorizing the publication of notice of special election stated the number of bonds proposed to be issued for that purpose to be fifty, of the denomination of five hundred dollars each. After it was voted to issue the bonds the number was changed by a subsequent ordinance to forty bonds of five hundred dollars

each, and twenty bonds of two hundred and fifty dollars each.

Section 3 of the act of 1889 (Stats. 1889, p. 400) provides that the ordinance shall state "the number and character of the bonds to be issued." The amount of the bonds or of the indebtedness to be incurred for the specific purpose was not changed. Those directions which are not of the essence of the thing to be done, and by the failure to obey which the rights of those interested will not be prejudiced, are not to be regarded as mandatory. (Sutherland on Statutory Construction, sec. 447.) The change did not affect the validity of the bonds, and as no greater burden is imposed upon the taxpayers the appellant cannot complain.

4. Appellant also urges that said bonds are void, for the reason that they provide for the semi-annual payment of interest.

The statute provides that the trustees shall have the right to determine the rate of interest such bonds shall bear, provided that in no case shall it exceed seven per cent per annum. The time at which the interest is to be paid, whether annually or semi-annually, affects the rate of interest, and is within the power conferred upon the board by the statute, and, the rate being within the statutory limit, the bonds are valid as against this objection.

5. Appellant further contends that the notice of special election does not contain a sufficient statement of the amount of the tax levy to be made annually.

The ordinance calling the election provides that the bonds should be of the character known as "serials." That one-twentieth part of the whole indebtedness for each purpose should be paid each year, including interest at the rate of six per cent per annum, payable semi-annually; that "the tax levy for the payment thereof amounts during the full period of twenty years to ninety-seven thousand eight hundred dollars" for the water works bonds, and to forty thousand seven hundred and fifty dollars for the sewer bonds. The only provision

of the statute touching what the notice of election shall contain in this regard is that it shall state "the amount of tax levy to be made for the payment thereof." It would be difficult to make the notice more specific in this regard. It contains all the *data* required for the purpose of calculating the precise amount of the levy for each year, and that is certain which is capable of being rendered certain. Besides, there were two propositions to be separately voted for, and, as was said in *City of San Luis Obispo* v. *Haskin,* 91 Cal. 551, "the best it could do was to fix the proportion of the indebtedness which should be paid each year."

At the most these several objections urged by appellant are matters of mere irregularity which do not affect the validity of the bonds in the hands of the purchaser, and, therefore, constitute no ground for assailing the levy of a tax to meet the annual installments of principal and interest due thereon.

The judgment appealed from should be affirmed.

Searls, C., and Vanclief, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

De Haven, J., Fitzgerald, J., McFarland, J.