[L. A. No. 8780. In Bank.—November 20, 1925.]

## COUNTY SANITATION DISTRICT No. 4 OF LOS ANGELES COUNTY, Petitioner, v. H. A. PAYNE, Auditor, etc., Respondent.

[1] STATUTORY CONSTRUCTION—SPECIAL STATUTES NOT CONTROLLED BY GENERAL STATUTES.—Statutes dealing specifically with a particular object are not ordinarily controlled or affected by general statutes.

[2] COUNTY SANITATION DISTRICT ACT—PUBLICATION OF RESOLUTION OF INTENTION—NEWSPAPERS.—The provision of section 2 of the "County Sanitation District Act" (Stats. 1923, p. 498) that a board of supervisors desiring to create a sanitation district shall adopt a resolution of intention so to do and said resolution "shall, prior to the time of hearing, be published at length twice in at least one of the newspapers of general circulation in the proposed district and brief notices of the passage of such resolution and the time and place of hearing provided thereby may be published in any one or more of the daily and weekly newspapers published and circulated in said proposed district," simply means that the resolution "shall" be published at length in a newspaper, to be named by the board of supervisors, which has a general circulation within the proposed district, and that the board "may," in its discretion, but is not required to publish said resolution in a newspaper which is published and circulated in the proposed district, even if such a newspaper should be so published and circulated.

[3] STATUTES—APPLICATION BY COURTS—MATTERS TO BE NOTICED—INTENT OF LEGISLATURE.—In considering the application of statutes or laws, the court must take notice of the persons, things, and conditions not intended to be affected thereby, as well as the persons, things, or conditions which it was the evident intention of the legislature that such laws should affect or operate upon.

---

1. See 23 Cal. Jur. 762; 25 R. C. L. 927.
3. See 23 Cal. Jur. 725; 25 R. C. L. 1013.

[4] COUNTY SANITATION DISTRICT ACT—NEWSPAPERS—POLITICAL CODE SECTIONS INAPPLICABLE.—It was never intended that the provisions of sections 4458, 4459, 4460, 4462, and 4463 of the Political Code, relating to the newspaper in which notices are to be published, should have application to a county sanitation district; and a county sanitation district is not within the provision of said section 4458 that, "Where no newspaper of general circulation is published within the jurisdiction of such official, then such publication or notice by publication, or official advertising, shall be given or made in a newspaper of general circulation, published nearest thereto."

[5] ID.—ABSENCE OF NEWSPAPER IN RURAL DISTRICT—JUDICIAL NOTICE.—The court may take judicial notice of the fact that there are many rural settlements and residence districts thickly populated which are not included within the police jurisdiction of any incorporated city or municipality and in which no newspaper is published or printed.

[6] ID.—DESIGNATION OF NEWSPAPER—PUBLICATION IN OTHER PAPER.—The publication of the resolution calling a county sanitation district bond election in a newspaper other than the one designated as the newspaper to make such publication is not in compliance with law.

[7] ID.—SIZE OF TYPE—SUBSTANTIAL COMPLIANCE WITH STATUTE.—The publication of the resolution calling a county sanitation district bond election in five and one-half point type instead of at least six-point (nonpareil) type, constitutes a substantial compliance with the requirements of section 4459 of the Political Code, where a five and one-half point slug is used which has the effect of making the resolution stand out quite as prominently and attractively as if six-point type had been used; but the plain letter of statutes in such cases should not be departed from, as such departures or omissions, though seemingly slight, might in some cases compel the annulment of the entire proceeding or cause a reversal of the cause.

(1) 36 Cyc., p. 1151, n. 57.   (2) 29 C. J., p. 244, n. 89.   (3) 36 Cyc., p. 1110, n. 54.   (4) 29 C. J., p. 244, n. 89.   (5) 23 C. J., p. 161, n. 73.   (6) 29 C. J., p. 244, n. 97.   (7) 29 C. J., p. 271, n. 78.

PROCEEDING in Mandamus to compel the auditor of a county sanitation district to sign certain bonds. Writ granted.

4.  See 19 Cal. Jur. 1071.

The facts are stated in the opinion of the court.

Hugh Gordon for Petitioner.

Edward T. Bishop, County Counsel, and J. F. Moroney, Deputy County Counsel, for Respondent.

SEAWELL, J.—This is an application for a writ of *mandamus* to compel the respondent, H. A. Payne, who, as auditor of the county of Los Angeles, under the provisions of the "County Sanitation District Act" (Stats. 1923, p. 498, c. 250; amended Stats. 1925, p. 4, c. 8) is *ex-officio* auditor of sanitation district No. 4, county of Los Angeles, to affix his official signature to certain bonds, as required by said act, the issuance thereof having been authorized in the sum of two hundred and forty thousand dollars for sewage and sanitation purposes, at an election called and held in said district March 1, 1925. There is no dispute as to the facts.

Two reasons are urged by the auditor, either of which, it is claimed, is sufficient to justify him in withholding his official signature from said bonds, to wit: first, that the resolution adopted by the board of supervisors declaring its intention to form said district was not published according to law; second, that the resolution adopted by the board of supervisors calling said election at which the proposition of the bonded indebtedness of the district was to be submitted to a vote of the electors of said district was not published according to law.

The specific objection first made is that the publication of the resolution of intention did not comply with section 2 of the County Sanitation District Act, nor with the provisions of section 4458 of the Political Code. Section 2 is a part of a comprehensive act specially providing for the creation of sanitation districts, while section 4458, *supra,* is general. [1] The rule of construction is that statutes dealing specifically with a particular subject are not ordinarily controlled or affected by general statutes. [2] Section 2 of said act provides that the board of supervisors desiring to create a sanitation district shall adopt a resolution of its intention so to do and said resolution "shall, prior to the time of hearing, be published at length twice

in at least one of the newspapers of general circulation in
the proposed district and *brief notices* of the passage of
such resolution and the time and place of hearing provided
thereby *may* be published in any one or more of the daily
and weekly newspapers published and circulated in said pro-
posed district.'' (Italics supplied.) It is admitted that no
newspaper was composed, printed, and issued from a print-
ing-press operated within the limits of the proposed district
and that the newspaper which was designated by the board
of supervisors, to wit, ·''Los Angeles Daily Journal,'' in
which the resolution was published, was a newspaper of gen-
eral circulation within the district proposed to be created,
and it was also the newspaper in which the official notices
and publications are usually printed on behalf of both the
city and the county of Los Angeles. Clearly the statute
deals with two separate and distinct matters, to wit, the
publishing at length of the resolution of intention in a news-
paper of general circulation in the proposed district, to be
designated by the board, and for the publication of brief
notices of the passage of said resolution of intention and
the time and place of hearing thereof in one or more of the
daily and weekly newspapers *published and circulated* in
said proposed district. The language of said section, taken
in a literal sense, means simply this: The resolution of in-
tention shall be published at length in a newspaper to be
named by the board of supervisors which has a general
circulation within the proposed district, but the board is not
required to publish said resolution in a newspaper which
is published and circulated in the district even if such a
newspaper should be so published and circulated. If the
board, in its discretion, in additon to making the mandatory
publication, which seems necessary to jurisdiction, should
also determine that brief notices of the passage of the reso-
lution of intention to form said proposed district and
notices stating the time and place of hearing ought to be
published, it may publish the same in one or more of the
daily and weekly newspapers *published and circulated* in
said district. If the word ''published'' as used in conjunc-
tion with ''circulated,'' providing for discretionary action
upon the part of the board as to the giving of publicity
by brief notices of the passage of the resolution and the
time and place of hearing, may be said to be used in the

sense that said notices, if given, may be published only in a newspaper the mechanical work of producing which is performed wholly within the proposed district and circulated therein, the board, by the language of the statute, was, in the instant case, deprived of the privilege of exercising its discretion, inasmuch as no newspaper so produced was printed or published and circulated within the boundaries of the proposed district. The mandatory portion of said section was literally complied with by the publication of the resolution of intention as actually made by the order of the board of supervisors of the county.

It is the contention of respondent that said section 2 of the County Sanitation District Act must be construed with sections 4458, 4459, 4460, 4462, and 4463 of the Political Code. Respondent's arguments are chiefly grounded upon the provisions of sections 4458 and 4460 of said code. The first in numerical order provides as follows:

''Whenever any publication, or notice by publication, or official advertising is required to be given or made by the provisions of this code, the Civil Code, the Code of Civil Procedure, the Penal Code, or by any law of the state, by any officer now existing, or any hereafter created, in this state, or any political subdivision thereof, or by any officer of any court, or officer of a county, city, city and county, or town in this state, such publication, or notice by publication, or official advertising shall be given or made only in a newspaper of general circulation, where such a newspaper is published within the jurisdiction of such official. Where no newspaper of general circulation is published within the jurisdiction of such official, then such publication or notice by publication, or official advertising, shall be given or made in a newspaper of general circulation, published nearest thereto.''

The last clause of the section above set out furnishes the grounds for the argument that, since there was no newspaper of general circulation, as the same is defined by the code, within the proposed district, the publication of the resolution of intention should have been made in a newspaper of general circulation published nearest thereto, of which there were two published nearer to the boundary lines of said proposed district than the ''Los Angeles Daily Journal.''  **[3]**  In considering the application of statutes or

laws we must take notice of the persons, things, and conditions not intended to be affected thereby as well as the persons, things, or conditions which it was the evident intention of the legislature that such laws should affect or operate upon. The section last above cited defines the duty of an officer of a political subdivision or of any court, county, city, city and county, or town in this state who by virtue of his office is charged with the duty of giving notices by publication as required by law in the administration of his official duties. If the section be given a literal interpretation, the members of the board of supervisors being county officers (Pol. Code, sec. 4013), the board was authorized to make publication of the resolution of intention in the "Los Angeles Daily Journal," a newspaper of general circulation, published within the jurisdiction of such officials, to wit, county of Los Angeles. [4] While this conclusion is sustainable under the language of the Political Code *sections* cited, we feel satisfied that as those sections were enacted many years before the adoption of the sanitation act under consideration, it was not intended that they should have application to a county sanitation district. While it is not necessary, in our view of the law of the case, to interpret the phrase "or any political subdivison thereof," as found in section 4458, *supra,* this court held in *Bettencourt* v. *Industrial Acc. Com.,* 175 Cal. 559 [166 Pac. 323], that reclamation districts, which surely partake in a greater degree of the nature of political or governmental powers than a sanitation district, possess no political nor governmental powers and are not public corporations but mere "governmental mandatories or agents vested with limited powers to accomplish limited and specific work." From the foregoing it follows that petitioner is not within the phrase or clause of the section of the code last above referred to.

If section 4460 of the Political Code, which defines "a newspaper of general circulation" to be one "established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made," etc., is to govern section 2 of the County Sanitation District Act, and the jurisdiction of the board of supervisors, which is as broad as the limits of the county which

it serves, is to be cut down to come within section 4458. *supra*, as contended by respondent, then it would not be possible, as respondent frankly admits, to organize a sanitation district within any area, however populous or extensive its limits may be, in which no newspaper is "established, printed and published." Such a construction would have the effect of defeating the creation of sanitation districts in very many instances. [5] We may take judicial notice of the fact that there are many rural settlements and residence districts thickly populated which are not included within the police jurisdiction of any incorporated city or municipality and in which no newspaper is published or printed, as in the instant case. The construction contended for, if accepted, would lead to harsh results and would be violative of section 22 of said act, which provides: "This act, and every part hereof, shall be liberally construed to promote the objects hereof, and to carry out its intents and purposes."

It is next urged that the "Hollywood News," the newspaper designated by the board of directors of said district to publish the resolution calling the bond election, used in publishing said resolution five and one-half point type instead of six-point type, and this departure from the statute, it is claimed, renders the election invalid. The statute provides that such a publication must be set in type not smaller than nonpareil, which is six-point type, and must be preceded with words printed in black-face type, not smaller than nonpareil, describing the notice intended to be given. (Secs. 4459, Pol. Code.) It is admitted that the resolution was printed in the "Hollywood Citizen," a newspaper circulated within the proposed district, and printed in type of legal size and for the period prescribed by law. [6] The "Hollywood Citizen," however, was not designated as the newspaper to make such publication. For that reason the publication as made by that newspaper was not in compliance with law. (*Donnelly* v. *Tillman,* 47 Cal. 41; *Napa* v. *Easterby,* 61 Cal. 509; Wade on Notice, secs. 1106, 1108, 1123.)

[7] The question remaining is whether or not the publication of the resolution in five and one-half point type instead of six-point is a substantial compliance with the requirements of section 4459, *supra.* The difference in size

between five and one-half point type and six-point type is exceedingly slight. In the instant case, however, a five and one-half point slug was used which had the effect of making the resolution stand out quite as prominently and attractively as if six point had been used. Construing this section as to the requirement of "black-face type," which is closely analogous to the point here made, this court in *Clark* v. *City of Los Angeles*, 160 Cal. 43 [116 Pac. 722], thus disposed of the question:

"Another objection is that the publication of the ordinance was insufficient because it was not preceded by words in black-face type describing in general terms the purport or character of the notice intended to be given, as directed by Section 4459 of the Political Code. (See *Derby* v. *Modesto*, 104 Cal. 523 [38 Pac. 900].) The ordinance was preceded by its title, which clearly described its purport. We do not regard the fact that it was not printed in blackface type of sufficient importance to warrant a holding that the proceedings were thereby invalidated, even if the section cited was applicable to the election notice in question, which we do not decide."

The plain letter of statutes in such cases should not be departed from and by our holding in the instant case that there was a substantial compliance with the statute and no injury resulted therefrom, we do not mean to be understood as encouraging departures from legislative requirements, under any circumstance. Such departures or omissions, though seemingly slight, might in some cases compel the annulment of the entire proceeding or cause a reversal of the cause.

Let the peremptory writ of mandate issue.

Richards, J., Shenk, J., Myers, C. J., Waste, J., and Lawlor, J., concurred.