[L. A. No. 8906. In Bank.—September 26, 1927.]

In the Matter of the Estate of HARRY C. FISHER, Deceased. HART C. FISHER, Appellant, v. SECURITY TRUST & SAVINGS BANK, Exr., etc., Respondent.

[1] ESTATES OF DECEASED PERSONS—WILLS—MENTAL COMPETENCY—EVIDENCE.—The presumption of law is that a person is sane, and the burden is always upon the contestant to show affirmatively by a preponderance of evidence that the testator was of unsound mind at the very time of the execution of his will. Evidence of the testator's mental condition both before and after the execution of the instrument is relevant and admissible for the light that it sheds upon the soundness of his mind at the time of the execution of the will.

[2] ID.—USE OF INTOXICATING LIQUORS—TESTAMENTARY CAPACITY—PRESUMPTION.—Where the point is made that a decedent was of unsound mind at the time he executed his will because of long use of alcoholic liquors, evidence of such use both before and after the execution of the will and of the effect thereof upon his mind is admissible in so far as it tends to reveal his mental condition at the time of the execution of the will. The intemperate use of alcoholic beverages, if continued for a sufficient length of time, may destroy testamentary capacity; but, nevertheless, in the absence of proof that the intemperate use has actually destroyed the testamentary capacity, no presumption will be indulged, however long continued the habit is shown to have been, that it has thus been destroyed.

[3] ID.—INEBRIETY—COMMITMENT TO STATE HOSPITAL—EVIDENCE.—Where a claim is made that an excessive addiction to alcoholic liquors for a period of years preceding the execution of his will has destroyed a testator's mental powers, the record of his commitment to a state hospital for inebriety, under section 2185c of the Political Code, is admissible in proof of the intemperate use of such liquors, and the fact that the acts of intemperance for which the commitment was made took place at a period two years before the execution of the will does not render the record

1. See 26 Cal. Jur. 635, 756; 28 R. C. L. 97.

2. Effect of intoxication upon testamentary capacity, note, 39 L. R. A. 220. See, also, 26 Cal. Jur. 670; 28 R. C. L. 95.

3. Admissibility and probative force of adjudication of insanity, notes, 7 A. L. R. 581, 602. See, also, 26 Cal. Jur. 634, 635; 28 R. C. L. 100.

inadmissible on the theory that the acts therein recited were too remote to be weighed as evidence.

[4] ID.—COMMITMENT AS EVIDENCE—MENTAL IMPAIRMENT.—The commitment in such cases is based on a determination that the subject is one who, when under the influence of liquor, loses the power of self-control, and that he is so frequently in such a condition as to require confinement; but it is not even *prima facie* evidence that the use of alcoholic liquors has caused a permanent impairment of the mental faculties and a loss of self-control which persists after the temporary effects of the liquor have passed away, nor will it be presumed from the fact that the subject of the commitment was a victim of the liquor habit at the time of the commitment that such habit persisted thereafter.

[5] ID.—MENTAL DISEASE—CONTINUANCE—PRESUMPTION.—It is only in those cases where the mental disease has become settled that the mental disorder is presumed to continue.

[6] ID.—EXCLUSION OF COMMITMENT FOR INEBRIETY—LACK OF PREJUDICE.—In a will contest, if it be conceded that the record of the commitment of the testator to a state hospital for inebriety was admissible in evidence, its exclusion did not prejudice contestant's case and does not constitute reversible error where, giving the fullest effect possible to said record and the evidence introduced by contestant as to testator's indulgence in the excessive use of alcoholic stimulants and to the evidence which, it is charged, was erroneously excluded, the proof would be wholly insufficient as a matter of law to sustain the finding of mental incompetency.

[7] ID.—TESTAMENTARY CAPACITY—INTOXICATION.—Proof that the decedent was "incompetent" or "insane" when so intoxicated that it was necessary to arrest him, or upon occasions when, as testified, he "only needed another drink to put him down and out," is entirely insufficient to show that decedent never enjoyed lucid intervals during which he was competent to execute a will.

[8] ID.—INTIMATE ACQUAINTANCES—DISCRETION OF COURT.—The trial court is vested with wide discretion in determining whether a witness has brought himself within the intimate acquaintance rule laid down by subdivision 10 of section 1870 of the Code of Civil Procedure.

---

4. Inquisition of drunkenness as evidence of testamentary capacity, note, 39 L. R. A. 227.

5. Presumption as to continuance of permanent insanity, note, 4 Ann. Cas. 491. Presumption as to continuance of insanity, note, 35 L. R. A. 117. See, also, 26 Cal. Jur. 635; 28 R. C. L. 99.

7. See 26 Cal. Jur. 670.

8. See 26 Cal. Jur. 748.

[9] ID.—ERRONEOUS REJECTION OF EVIDENCE—LACK OF PREJUDICE.— The contestant was not prejudiced in a will contest by an error of the court in refusing to admit the record of commitment of the testator to a state hospital for inebriety in evidence nor by excluding the opinions of certain witnesses as to the testator's mental competency, where every fact which from necessity must have formed the basis of the commitment and likewise the basis of the "reasons" of said witnesses had they been permitted to express an opinion, was fully before the court.

[10] APPEAL—NEW TRIAL—RULINGS ON EVIDENCE.—No judgment shall be set aside, or new trial granted, in any case on the ground of the improper admission or rejection of evidence unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.

---

(1) 40 **Cyc.**, p. 1020, n. 11, p. 1028, n. 77.   (2) 40 **Cyc.**, p. 1020, n. 7.   (3) 40 **Cyc.**, p. 1029, n. 34.   (4) 40 **Cyc.**, p. 1020, n. 8, p. 1042, n. 67.   (5) 22 **C. J.**, p. 87, n. 90.   (6) 40 **Cyc.**, p. 1332, n. 43, p. 1359, n. 77.   (7) 40 **Cyc.**, p. 1016, n. 85.   (8) 22 **C. J.**, p. 607, n. 21, 22.   (9) 4 **C. J.**, p. 1010, n. 7.   (10) 4 **C. J.**, p. 1173, n. 64.

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate. J. D. Murphey, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Fogel & Beman for Appellant.

Meserve & Meserve, Clifford E. Hughes and Timon E. Owens for Respondent.

SEAWELL, J.—This is an appeal from an order admitting the will of decedent to probate. The Security Trust and Savings Bank of the city of Los Angeles filed a petition in the superior court of the county of Los Angeles for the probate of the holographic will of Harry C. Fisher, deceased, wherein it was named as executor. Said will was produced subsequent to the issuance of letters of administration to Hart C. Fisher, father of the decedent. The said father opposed the admission to probate of said will, which was dated August 12, 1919, alleging that said

---

10. See 2 **Cal. Jur.** 1006; 2 **R. C. L.** 233.

Harry C. Fisher was not of sound mind at the time he executed the purported will; that the instrument was not entirely written, dated, and signed in the handwriting of decedent, and that if executed at all by decedent it was procured by the undue influence of Josephine Anderson, his aunt, who was named as a beneficiary therein. At the hearing contestant introduced no evidence whatsoever in support of his charges that the instrument was not entirely written, dated, and signed by the decedent and that it was procured by the undue influence of decedent's aunt, but relied wholly upon decedent's unsoundness of mind as a ground of opposition to the admission of the will to probate. The contest being heard by the court without a jury, it found against contestant on all three issues and accordingly decreed that the will was entitled to be admitted to probate and directed that letters testamentary be issued to petitioner.

Contestant asserts that the trial court committed reversible error in refusing to permit him to introduce in evidence the record in a proceeding in the superior court of the county of Los Angeles taken under the provisions of section 2185c of the Political Code, wherein decedent was committed to a state hospital for inebriety for a period of two years commencing June 21, 1917. It is contestant's contention that the order of commitment was a judicial determination that decedent was of unsound mind on the date of the order; that the presumption is that insanity judicially established continues until restoration to capacity, and that the evidence introduced by petitioner was insufficient to rebut the presumption of incompetency. It is further contended that the court erred in refusing to permit the witnesses offered by contestant to testify as to decedent's soundness of mind.

[1] The presumption of law is that a person is sane, and the burden is always upon the contestant to show affirmatively by a preponderance of evidence that the testator was of unsound mind at the very time of the execution of the will. (*Estate of Perkins*, 195 Cal. 699 [235 Pac. 45], and cases therein cited; 26 Cal. Jur. 635.) Evidence of the testator's mental condition both before and after the execution of the instrument is relevant and admissible for the light that it sheds upon the soundness of his mind at the time of the execution of the will. (*Estate of Perkins, supra;*

*In re Wilson,* 117 Cal. 262 [49 Pac. 172, 711]; *Estate of Barr,* 69 Cal. App. 16 [230 Pac. 181].) It appears from the testimony adduced on behalf of proponent, as· well as from that of contestant, that decedent for several years before his death was addicted to the excessive use of alcoholic liquors and possessed confirmed habits of intoxication. Contestant makes no claim that decedent suffered from mental disabilty or unsoundness of mind as the result of any other cause or condition. [2] Where the point is made that a decedent was of unsound mind at the time he executed his will because of long use of alcoholic liquors, evidence of such use both before and after the execution of the will and of the effect thereof upon his mind is admissible in so far as it tends to reveal his mental condition at the time of the execution of the will. The intemperate use of alcoholic beverages, if continued for a sufficient length of time, may destroy testamentary capacity. Nevertheless, in the absence of proof that the intemperate use has actually destroyed testamentary capacity, no presumption will be indulged, however long continued the habit is shown to have been, that it has thus been destroyed.

[3] Contestant offered in evidence the records in a proceeding in the superior court of the county of Los Angeles in which decedent was committed to a state hospital for a period of two years commencing June 21, 1917, in pursuance of the provisions of section 2185c of the Political Code. The trial court ruled that such record was inadmissible, on the theory that it related to decedent's condition at a time too remote from the date of the execution of the will, in 1919, and on the further ground that a commitment for inebriety is not an adjudication of mental incompetency. Section 2185c of the Political Code provides for the arrest and commitment to a state hospital by the judge of the superior court, after an examination and hearing in open court, of persons who are "so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control" or who are "subject to dipsomania or inebriety." Where a claim is made that an excessive addiction to alcoholic liquors for a period of years preceding the execution of the will has destroyed a testator's mental powers, we are of the opinion that the record of a commitment under section 2185c is admissible in proof of the

202 Cal.—14

intemperate use of such liquors, and the fact that the acts of intemperance for which the commitment was made took place at a period two years before the execution of the will does not render the record inadmissible on the theory that the acts therein recited are too remote to be weighed as evidence. [4] The commitment in such cases is based on a determination that the subject is one who, when under the influence of liquor, loses the power of self-control, and that he is so frequently in such a condition as to require confinement. It is not, however, even *prima facie* evidence that the use of alcoholic liquors has caused a permanent impairment of the mental faculties and a loss of self-control which persists after the temporary effects of the liquor have passed away, nor will it be presumed from the fact that the subject of the commitment was a victim of the liquor habit at the time of the commitment that such habit persisted thereafter. [5] It is only in those cases where the mental disease has become settled that the mental disorder is presumed to continue.

[6] If it be conceded that the record of the commitment proceedings was admissible in the instant case, its exclusion did not prejudice contestant's case and does not constitute reversible error, for giving the fullest effect possible to said record and to the evidence introduced by contestant as to testator's indulgence in the excessive use of alcoholic stimulants and to the evidence which, it is charged, was erroneously excluded, the proof would be wholly insufficient as a matter of law to sustain a finding of mental incompetency. Practically all of the facts as to the effect of the inordinate use of alcoholic liquors upon decedent were shown in evidence.

The witness Webb, who since 1916 has been chief of police of the city of Santa Monica, where decedent resided for a time, testified that in the course of the performance of his duties he had come in contact with decedent at various times between 1916 and the date of his death, when decedent was arrested for drunkenness; that he had been arrested on an average of "probably two or three times a year," and that he had talked to decedent on the streets on "an average of once every two or three months," on which occasions he gave evidence of having been drinking, but was not sufficiently intoxicated to be arrested; that to his knowledge he had never seen him when he was sober. The witness also stated

that he did not recall having seen him at any time during the year 1919, in which year the will was executed, and that the records of his department did not show that he had been in custody during that year. Appellant contends that this witness was qualified to testify as to the decedent's condition of mind under the rule permitting an intimate acquaintance to testify respecting the mental sanity of a person, the reason for the opinion being given (sec. 1870, subd. 10, Code Civ. Proc.), and that the trial court erred in sustaining objections to certain questions put to this witness. As a matter of fact said witness was permitted to testify to all matters within his knowledge, over the objection of opposing counsel. The following excerpt from the testimony of said witness shows the extent and basis of his knowledge on the issue of decedent's soundness of mind: "The Court: He has already said he was incompetent. Let's find out what was the reason. What did you mean by 'incompetent'? That a man can't transact business at any time. Do you think he was continually insane? A. Well he was continually intoxicated, I would say, under the influence of liquor. Q. That is not what you are asked at all. A. And at times we brought the man in, he talked like a wild man. Q. That is not the question here. The question at issue here is whether he was insane or sane. A. I can't testify to that because I am not a medical man. Q. The question is whether in your judgment the man was sane or insane. A. In my judgment, your Honor, I would say the man was insane. Q. All the time? A. No, I wouldn't state that. Mr. Meserve [attorney for petitioner]: You mean he was insane when he was drunk? A. Yes, I would say he was insane drunk. Q. Insane drunk? A. Yes, and he wasn't competent. Q. That was due entirely to the use of liquor just before that time, when he got drunk? A. To the continual use of liquor, yes, sir. Q. Now you kept him there in the jail until he got sober, didn't you? A. Yes. Q. And when he would get out he would be sober? A. Yes. Q. And then he wouldn't be insanely drunk when he was sober? A. Well, I would say the man—he was very intemperate. When we let him out—we continually had trouble with Harry Fisher. Q. Let's just get down to it. You stated you were chief of police. You kept him in the jail until he was sober? A. Yes. Q. When you turned him out he was sober, wasn't

he? A. Yes. Q. And he wasn't insane, when he was sober, was he? A. No."

This evidence is wholly insufficient to show that the use of intoxicants by decedent had rendered him testamentarily incompetent. The witness testified that he saw decedent once every two or three months and on the occasions when he arrested him, which was two or three times a year, and that he never saw him sober except when he was released from jail. [7] Proof that decedent was "incompetent" or "insane" when so intoxicated that it was necessary to arrest him or upon occasions when, in the words of the witness, he "only needed another drink to put him down and out," is entirely insufficient to show that decedent never enjoyed lucid intervals during which he was competent to execute a will. The witness himself testified that the decedent was not released from jail until sober and that he was not insane when sober.

The court also refused to permit the witness Davis, a police officer of the city of Venice, to state whether decedent was competent and of sound mind in 1919, on the ground that it had not been shown that said Davis was qualified as an intimate acquaintance. Davis stated that in the course of his duties he saw decedent "off and on almost every evening" during May, 1919; that he made him go home, put him on the car and talked to him "just long enough to get him across the line into Santa Monica"; that he arrested him on one occasion, and that he saw him less frequently in 1920.

Proponent's objections to the testimony of C. K. Pierce, a patrolman connected with the Santa Monica police department, were sustained by the court after said witness stated that he had never met decedent until August, 1921, two years after the will was executed. Although, as pointed out above, evidence of a testator's mental condition subsequent to the execution of the will is generally admissible, the court, in sustaining the objection to Pierce's testimony, no doubt acted under the apprehension that said witness' acquaintance with decedent was similar in nature to that of officers Webb and Davis and that any testimony which he might offer would relate to decedent's state of mind when his condition and conduct were such as to require the attention of officers of the law. Contestant made no offer to prove any other or different matters by said witness.

Wallace Braden, the only witness offered by contestant in addition to the three police officers to establish testator's unsoundness of mind, was shown to have resided in the flat next to that where decedent lived during 1916 and 1917. Said witness stated that after decedent moved away he saw him "some time during 1918" and in January or February, 1919, and on the day before his mother died, in May, 1919. The court sustained proponent's objection on the ground that the witness had not qualified as an intimate acquaintance and refused to permit him to state whether decedent was of sound mind. Thereupon counsel for contestant said "that is all." No attempt was made to show that the witness had ever talked to decedent, or that they had had dealings with each other as neighbors, friends or acquaintances.

[8] While the court is vested with wide discretion in determining whether a witness has brought himself within the intimate acquaintance rule (sec. 1870, subd. 10, Code Civ. Proc.), we are of the opinion that some of the witnesses, particularly witness Davis, who were not permitted to express an opinion, were qualified to do so as to the mental sanity of decedent. The facts upon which their opinions must have been predicated were, however, fully stated to the court, and it is quite evident that an expression of opinion by them would not have been of sufficient added weight to have established testamentary incapacity at the very time the will was executed. If the case were a close one upon the evidence a more serious question would be presented.

Neither contestant, who was the testator's father, nor the testator's brother testified as to his sanity. Testator's aunt, a beneficiary under the will, with whom he resided a large portion of the time after the death of his mother and to the time of his own death, testified that testator was sane and competent and that he had not been intoxicated in her presence at any time during the summer of 1919. Herbert M. Haskell, a disinterested witness and an attorney who practiced law in this state for a number of years and later became a banker, testified that the testator consulted him soon after his mother's death as to the requirements for a valid will and as to whether it would be legal if drawn by himself; that he was competent at that time to make a will; that he saw him from six or seven to a dozen times during the ensuing two or three months and discussed with him

literary subjects, and that decedent was a well-informed man; that he was of sound mind and competent to make a will, and that he did not observe a single thing in any of the conversations he had with him that would indicate that he was of unsound mind; that he was a clean-cut looking young chap who looked a good deal like a college man; and that he was rather favorably impressed with him personally.

[9] The contestant was not prejudiced by the error of the court in refusing to admit the record of commitment in evidence nor by the ruling excluding the opinions of the witnesses above referred to. Every fact which from necessity must have formed the basis of the commitment and likewise the basis of the "reasons" of said witnesses had they been permitted to express an opinion, were fully before the court. The former habits of testator were not shown to have affected or influenced his testamentary act. [10] "No judgment shall be set aside, or new trial granted in any case on the ground of . . . the improper admission or rejection of evidence . . . unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Art. VI, sec. 4½, Const.) If the opinions of said witnesses were based upon the facts as detailed by them, the expression of their opinions thereon doubtless would not and should not have changed the decision as to the testamentary capacity of testator.

Judgment affirmed.

Shenk, J., Richards, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.