[Civ. No. 2273.  Fourth Appellate District.—June 2, 1939.]

In the Matter of the Estate of ISAAC WILLIAM TANNER, Deceased.  LEWIS TANNER, Appellant, v. CAPPIE-TOLA CAROTHERS, Respondent.

Stickney & Stickney and Edward Strop for Appellant.

A. L. Hubbell and Sloane & Steiner for Respondent.

BARNARD, P. J.—This is an appeal from an order admitting a document to probate as the last will and testament of the deceased. The document reads as follows:

"Auguest 26 1933

"In the Name of God amen.

Tanner

"I Isaac William/ of the City of Escondido California County of San Diego Being of sound and, disposing mind and memory and not acting under menace, Fraud or under influence of any person whomsoever, do make publish and declare this to be my Last Will and testament First I give dvise and Bequeath one half of all the Property both personal and real that I may have at the time of my death, to Cappietola Carothers. Second I giv dvise Bequeath the remaining one half of my property both personal and real to be devided equely between my children. Nancy Elizbeth Silcox, William Steward Tanner, Carence Tanner, Arthur Tanner Ella Sargent Alton Tanner, Lewis Tanner. I hav all ready given each of my children land enough to more than take cair of them. Third, I hereby nominate constitute and appoint Cappietola, Carothers the executor of this my Last Will and testament without bond and hereby auithorise and empower her to sel any of my property without order of Court without notice, as she may see fit. I hereby revoke all other Wills maid by me.

"In Witness where of I have here unt set my hand

"ISAAC WILLIAM TANNER

"Witness: I positively know this to be Mr. Tanners signature

"Signed: IRA HANSEN

"ROBT A AGNEW

"We the undersigned at the request of I. W. Tanner in the presence of each other."

This was offered for probate by the respondent, who is named therein as executrix, and its probate was opposed by a son of the deceased, who is the appellant here. The proponent testified that the deceased showed her the will and read it to her at about the time it is dated, telling her that he had included her in the will "for all your kindness to me", and that during his last illness he handed the will to her and said: "You put this away." Mr. Tanner died on December 22, 1937.

The court admitted this instrument as an holographic will, finding "that such will was entirely written, dated, and signed by the hand of the testator himself and no address, date, or other matter written, printed or stamped on said document was incorporated in the provisions which were in the handwriting of the decedent".

With one exception, there is no question that all of this document down to and including the signature is entirely in the handwriting of the deceased. The appellant contends that the word "Tanner", which is inserted as the tenth word in the body of the instrument, was written by someone else. Two persons, who qualified as experts, gave an opinion to that effect. Two other witnesses, who had been familiar with the handwriting of the deceased over a period of years, testified that the word in question is in his handwriting. The appellant argues that a comparison of that word with the same word in the signature, as they appear in the photostatic copy of the document in the record, "establishes the fact that the same person did not write both of them". We are unable to agree with this contention. While we are not handwriting experts, the photostatic copy appears to us to support the testimony of the two witnesses who testified that the word is in the handwriting of the deceased. In any event, there is sufficient evidence to support the court's finding.

The main contention is that the document is rendered invalid as an holographic will by the words following the signature of the deceased. It is argued that the deceased dictated this portion to the witness Hansen, who wrote the same on the will; that he and the other witness then signed it; that the deceased then intended and declared that the dictated portion was a part of his will; and that this discloses that the deceased did not intend to dispose of his property by an holographic will. This is based upon a part of Hansen's testimony where he was led to say that the deceased asked that this portion be made a part of his will. In this connection Hansen testified on cross-examination: "Q. He asked you to write this, did he? A. Yes, sir. Q. And to make it a part of his will? A. Yes, sir."

In his direct examination Hansen testified that some time about August 26, 1933, Mr. Tanner came to his place of business and asked him if he would do him a favor, that at

Tanner's request he read the document, and that "he asked me if I would sign it, and I asked him if I had anything to do with the will and he said no, all I was was just merely a witness that would swear that was his signature". He then testified that at Mr. Tanner's request he wrote the words: "Witness: I positively know this to be Mr. Tanner's signature, signed"; and that he and Robt. A. Agnew then signed it. He did not directly testify that he wrote the words "We the undersigned at the request of I. W. Tanner in the presence of each other," but it may be inferred from his testimony that he did so.

It appears from the document that the deceased was not an educated man. While it is apparent that in preparing it he had the benefit of some form of will, there was no completion of an attestation clause. From the face of the document and from Mr. Hansen's testimony the court was justified in concluding that the deceased did not intend that the will should be ineffective until after an attestation clause had been completed. The witness Hansen was told that in writing what the deceased requested him to write he had nothing to do with the will and was merely a witness who could swear that this was the signature of the deceased. It would seem from the words used, as well as from the testimony, that the testator caused them to be placed there for the purpose of supplying proof of his own handwriting. As was said in the somewhat similar case of *In re Soher*, 78 Cal. 477 [21 Pac. 8], "And it seems to us that courts should presume that the intention of the testator was that of a reasonable and prudent man under the circumstances, and should not adopt a somewhat strained construction to defeat what there is every reason to believe was the desire of the testator. The witness clause is not, under the circumstances, to be considered as a portion of the will, which is no more affected by it than any other document which does not require attestation, such as a deed or contract would be."

In our opinion, the written words following the signature on this document are wholly disconnected from the writing itself and form no part thereof. (*Estate of Bower*, 11 Cal. (2d) 180 [78 Pac. (2d) 1012].) The evidence supports the court's finding that this written matter was not incorporated in the provisions which were in the handwriting of the decedent and its conclusion that the same was not intended as,

190

or to be considered as a part of the will.   (Probate Code, sec. 53.)

The order is affirmed.

Marks, J., and Griffin, J., concurred.