[Civ. No. 13605. Second Dist., Div. Three. Oct. 19, 1942.]

Estate of ANNIE CLARK, Deceased. WILLIAM PAUL CLARK et al., Appellants, v. ELSIE WALLMARK et al., Respondents.

LeRoy Anderson, A. J. McGuire and Elbert E. Hensley for Appellants.

Bartlett & Kearney and James A. Miller for Respondents.

SHAW, J. pro tem.—Appellants, who are two of the six children and heirs at law of Annie Clark, deceased, filed, before probate, a contest of a document offered for probate

as her will. After trial by the court sitting without a jury, an order was made admitting the will to probate, from which this appeal is taken.

The will purports to be both a holographic and a witnessed will. The grounds of contest are, that the will "is not such a document that complies with the law of California relating to holographic wills," that it "was not executed and attested with the formalities required by law," that at the time of its execution the testatrix was of unsound mind, and that its execution was procured by the undue influence of the other four children of the testatrix and of the wife of one of them. All the allegations of the contest on these matters were denied and the trial court found them to be untrue.

On the question whether the will was properly admitted as a holographic will, the above quoted allegation is not very enlightening as to the nature of appellants' objections to it, but in argument two points are presented; first, that the will is not dated, and second, that it is not entirely written and signed by the testatrix. ■ The Probate Code clearly provides, in section 53, that a will, to be holographic, must be "entirely written, dated and signed by the hand of the testator himself." The cases have firmly established the rule that the requirement of a date includes the day, month and year, and that if any one of them is omitted or not written by the testator the document cannot be admitted to probate as a holographic will. (26 Cal.Jur. 859, 860; *Estate of Vance*, (1916) 174 Cal. 122, 124 [162 P. 103, L.R.A. 1917C, 479]; *Estate of Maguire*, (1936) 14 Cal.App.2d 388, 389 [58 P.2d 209].) The date stated need not, however, be the actual date of execution of the will. (*Estate of Vance, supra; Estate of Fay*, (1904) 145 Cal. 82, 84 [78 P. 340, 104 Am.St.Rep. 17]; *Estate of Wilkinson*, (1931) 113 Cal.App. 645, 649 [298 P. 1037].)

■ Appellants in their brief state that the date appears in the will as "April 1-1-4 1940" and argue that from these figures no date can be ascertained. The printed transcript on appeal represents the date to be "April ∓ 14 1940," and the respondents in their brief assert that it is "April 14, 1940." In view of these conflicting statements we have caused the original will to be sent us from the trial court for our inspection. The whole document is written in an uncertain and wavering hand. At the top of it, where a

date would usually be, appears ''April 14, 1940,'' with a character interposed between ''April'' and ''14'' to which nothing short of a photographic reproduction could do exact justice. Except for this interposed character the date is complete and unquestionable. Inspection of this character indicates that a sort of vertical curlicue about half the height of the ''1'' in ''14'' was first written and then a nearly vertical straight line of about the same height as the ''1'' was drawn through this curlicue. The trial court might properly find, and we assume it did find, from inspection of the will, that this character resulted from an effort to correct a previous error of penmanship by striking out a meaningless form accidentally or otherwise wrongly put on the paper, and that such character was to be altogether disregarded in passing upon the will. There is nothing in the code definition of a holographic will as one ''entirely written, dated and signed by the hand of the testator himself'' which requires that his handwriting be perfect, or forbids the correction by him of any mistakes he may make in the course of writing his testamentary disposition. (See *Succession of McCay,* (1928) 166 La. 681 [117 So. 772].) The testimony indicates that the testatrix' signature may have been placed on the will on April 18, 1940, four days after the date stated in the will and as long after the body of the will was written; but if this be the fact, it does not prevent the will from being given effect as a holographic will, under the rule above stated.

On the question whether the will was written by the testatrix' own hand, the case is simply the ordinary one of conflicting evidence. Two witnesses produced by the proponents testified that they saw the testatrix writing the will, one of them saying she saw only a part of it being written. Three witnesses, two of them daughters and one a daughter-in-law of the testatrix, testified that they were familiar with her handwriting, that all of the will above the signature was in her handwriting, and that the signature itself was genuine. One of contestants' witnesses also conceded that the signature was genuine. Two witnesses testified that the testatrix wrote the signature in their presence, the body of the will having been previously written. The proponents produced witnesses who expressed the opinion that neither the body of the will nor the signature was in the handwriting of the testatrix. The trial court's resolution of this conflict is binding here.

Below the testatrix' signature to the will are the signa

tures of two persons, designated as "witnesses," with no further attestation clause, and the statement of a notary public over his signature that the will was "signed before me," with the date and venue. None of these matters was in the handwriting of the testatrix. However, they were obviously not intended to be a part of the will, and their presence on the same paper does not detract from its character as a holographic will. (*In re Soher*, (1889) 78 Cal. 477, 479 [21 P. 8]; *Estate of Tanner*, (1939) 33 Cal.App.2d 186, 189 [91 P. 2d 170].) Since the will was properly executed as a holographic will, we do not consider the points made against its attestation by the witnesses.

█ Coming to the ground of contest that the testatrix was of unsound mind, we find that it also was decided against appellants on conflicting evidence. Six witnesses, of whom four were children of the testatrix, testified that she was of sound mind at or about the time the will was executed. One of these witnesses was a physician who was called in to attend the testatrix on April 14, 1940, and continued to see her once or twice a day until her death on July 14, 1940. He testified that in his opinion she was of sound mind "from the latter part of April until some time in June, 1940," and that she "in the beginning had a fairly keen mind." Appellants produced several witnesses who testified to contrary opinions, but neither that fact, nor the further fact that two of respondents' witnesses, about the same time the will was signed, filed petitions seeking appointment as testatrix' guardian on the ground that she was incompetent, affords anything more than a basis for an argument on the weight of the evidence, on which we may not review the trial court's decision.

█ Neither do we find any lack of evidentiary support for the trial court's finding that the will was not the result of undue influence. We do not have here the usual case where someone to whom undue influence is charged profits by the dispositions made in the will. The will simply bequeaths the property of the testatrix to her children, who appear to be her only heirs, "share and share alike." The appellants alleged and the trial court found that the testatrix had executed a previous will on January 17, 1940, and while its contents do not appear in the record, except inferentially, the appellants conceded on the argument that it made the same disposition of the property as does the will in contest and that the main difference in sub-

stance was that the former will appointed Mr. Hensley, one of appellants' counsel, who was then acting as attorney for the testatrix, as executor, while the contested will appoints two of those charged with undue influence, Richard Clark and Mable Hammacker, as executors. Appellants contend that there are circumstances from which undue influence may be inferred, and that those named as executors in the will stood in a confidential relation to the testatrix and their undue influence is presumed as a matter of law. It appears that several of the respondents, who are children of testatrix, discussed with her, after the will of January 17, 1940, the making of a new will, but nothing further is shown regarding the character or contents of these conversations. The record is quite devoid of even a suggestion of undue influence by any of the respondents other than Richard Clark. The testatrix had an eye operation for cataract on February 23, 1940, and left the hospital February 26, 1940. From that time until March 17, 1940, she lived with her daughter, Mrs. Edna Grace, one of the appellants. She then went to live with her son, Richard Clark, and remained there until her death. He testified that he saw the testatrix write the will. She said to him, "Dickie, I want to make my will." He furnished her with a copy of a will, and a law book. He got the law book from his sister, Mrs. Wallmark, another of the respondents. He also furnished the paper on which testatrix wrote the will, and drew lines on the paper for her. After the will was written he took the testatrix to the notary's office where the will was signed and witnessed. On the way he picked up Mrs. Rea, one of the witnesses, telling her he wanted her to be a witness. At the notary's office, however, according to Mrs. Rea, the testatrix said she wanted to sign the will, produced it and proceeded to sign it. The notary gave substantially the same testimony on this point. Mr. Hensley testified that shortly after the execution of the will of January 17, 1940, in which he was named as executor, the testatrix told several of her children she wanted him to administer her estate, and one of the appellants testified that two days before the will in contest was dated the testatrix said she wanted Mr. Hensley to handle her affiairs. On the other hand, one of the respondents testified that the testatrix in March, 1940, "was bitter at Mr. Hensley" and said she wanted a new will. Mrs. Rea testified that after the will in contest was signed, the testatrix said she was glad she had done it. There is testimony showing that about April 10, 1940, while the testatrix was living with Richard, she bought a used automobile, which he used

to take her out riding and for other purposes, and that this purchase was made over the protest of Mr. Hensley, who was then looking after her business affairs. Richard initiated this transaction by going to the car dealer and picking out the car. Testatrix then looked it over, asked some questions about it and signed the contract. There is no showing that the testatrix did not enter into this transaction voluntarily, or indeed, that the idea of it did not originate with her.

These are, in brief, the matters relied on by appellants to show undue influence. We doubt if they would have supported a finding of undue influence if one had been made. Certainly they are not sufficient to justify us in reversing a finding adverse to appellants on that issue. Perhaps Richard Clark suggested the terms of the will, but to reach even that conclusion we must surmise, without proof, that the copy of *a* will which he gave to the testatrix was like *the* will which she executed, instead of being a mere legal form for her to use. It does not appear that he urged or insisted upon the execution of such a will as was made, or even that the suggestion of a will came from him in the first place. Indeed, according to his testimony it came from the testatrix.

█ In order to set aside a will on the ground of undue influence it is necessary to show that pressure was brought to bear directly upon the testamentary act, and that the influence was such as, in effect, to destroy the testator's free agency and substitute another person's will for his. Mere general influence not brought to bear upon the testamentary act is not enough; it must be influence used directly to procure the will and must amount to coercion destroying free agency on the part of the testator. Mere opportunity to influence the mind of the testator, even coupled with an interest or a motive to do so, is not sufficient. These propositions are well settled, and were recently declared in *Estate of Arnold,* (1940) 16 Cal.2d 573, 577 [107 P.2d 25.] █ The evidence here, taking it in the aspect most favorable to the findings, does not meet these tests and is not sufficient to establish undue influence as a matter of law.

█ As to the claimed confidential relationship, the mere naming of a person as executor of a will does not place him in a confidential relation to the testator. Nor does the mere relation of parent and child raise a presumption of undue influence. (*Best* v. *Paul,* (1929) 101 Cal.App. 497, 499 [281 P. 1089].) █ Assuming, however, that the additional facts that here the testatrix was living in Richard Clark's house and that he was active in connection with the execution of the will raise a pre-

sumption of undue influence on his part, the question whether such presumption has been overcome is one of fact to be determined by the trial court and its decision is binding upon us unless without evidentiary support. (*Schurman* v. *Look*, (1923) 63 Cal.App. 347, 355 [218 P. 624]; *Estate of Butts*, (1927) 201 Cal. 185, 188 [256 P. 200].) Upon the evidence here, which we have reviewed briefly, it was within the competence of the trial court to find, as it did, that the presumption, if there was one, was overcome.

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.