[Civ. No. 14551.   Second Dist., Div. Two.   Nov. 30, 1944.]

Estate of CATHERINE EWAN, Deceased. FLORENCE MARIE TALLEY, Appellant, v. FRITZ EHRMANN et al., Respondents.

MacDonald, Wallace, Cashin & Arrington for Appellant.

H. Y. Gibson for Respondents.

McCOMB, J.—From a judgment revoking admission to probate of a holographic will of Catherine Ewan, deceased, after trial before the court without a jury, proponent of the will appeals.

The essential facts are:

Catherine Ewan died testate on April 16, 1943. She left an holographic will which read thus:

"April 9, 1943.

"I, Catherine Ewan, hereby will all of my property real and personal, to my niece, Florence Marie Talley, and appoint her my executor without bond.

(Signed) "Mrs. Catherine Ewan."

Surviving decedent were three sisters and four brothers. After the will was admitted to probate, the brothers and two sisters filed a petition for revocation of the will on the grounds that:

(1) Decedent was not of sound and disposing mind and memory at the time of the execution of the will;

(2) The will was procured by the undue influence of the beneficiary, Florence Marie Talley; and

(3) The will was not executed in the manner and form required by law.

The trial court found in favor of respondents (contestants in the trial court) on each of the three grounds of contest and made findings accordingly.

Appellant (proponent of the will in the trial court) urges reversal of the judgment on this proposition:

*There is not any substantial evidence to sustain the trial court's findings that:*

*(1) Decedent was not of sound and disposing mind and memory at the time she executed her will;*

*(2) Decedent was acting under the undue influence of the beneficiary, Florence Marie Talley, at the time she executed the will; and*

*(3) The will was not executed in the manner and form required by law.*

This proposition is tenable and is governed by the following pertinent rules of law:

■ (1) There is a presumption that a testator is sane and has testamentary capacity, and the burden is upon the contestant to show affirmatively by a preponderance of evidence that the testator was of unsound mind at the *very time* of the execution of the will. *(Estate of Fisher,* 202 Cal. 205, 208 [259 P. 755]; *Estate of Perkins,* 195 Cal. 699, 703 [235 P. 45]. See, also, cases cited in 26 Cal.Jur. (1926), page 635, § 10, note 4; and 11 Cal.Jur.Supp. (1936), page 500, § 10, note 4.)

■ (2) However much a will may be at variance with expressions by the testator, it will not be held invalid on the ground of undue influence unless there is a showing of some sort of pressure which overpowered the mind and mastered the volition of the testator at the *very moment* of the execution of the will. *(Estate of Clark,* 170 Cal. 418, 424 [149 P. 828]; *Estate of Rabinowitz,* 58 Cal.App.2d 106, 111 [135 P.2d 579]; *Estate of Clark,* 55 Cal.App.2d 85, 91 [129 P.2d 969]; *Estate of Grant,* 8 Cal.App.2d 232, 242 [47 P.2d 508]; *Estate of Arnold,* 16 Cal.2d 573, 577 [107 P.2d 25].)

■ Applying the foregoing rules to the facts in the instant case, the record discloses that decedent, an elderly widow, lived alone in North Hollywood, California, and that Florence Marie Talley, decedent's niece, employed by the Bureau of Power & Light in Los Angeles, visited her aunt, Mrs. Ewan, about once a month; that when Mrs. Ewan became ill she visited her two or three times a week. On April 5, 1943, Mrs. Poulton telephoned Mrs. Talley stating that Mrs. Ewan was quite ill. Mrs. Talley shortly thereafter visited her aunt; found her ill and at her aunt's request tried to get a doctor for her. She also arranged to, and did take Mrs. Ewan to the California Lutheran Hospital in Los Angeles.

On April 5, 1943, Dr. Chaffin visited Mrs. Ewan at the hospital and prescribed for her. Dr. Chaffin testified that there was not any indication at any time that decedent's mind was affected by her illness and that, in his opinion, she was com-

petent to make a last will and testament. When taken to the hospital decedent had a bank account in a branch of the First National Bank of Los Angeles. Mrs. Ewan instructed Mrs. Talley to draw the money from her bank account and use it for the purpose of paying bills in connection with her illness. Pursuant to this instruction, Mrs. Talley took the money from Mrs. Ewan's account and deposited it in her own account. On July 20, 1940, decedent had executed an holographic will by the terms of which she willed all of her property to her nephew, C. W. Ault. On February 8, 1943, Mrs. Ewan asked Mrs. Talley to telephone her attorney, Philip Lyons, and ask him to come and see her, stating that she wanted to change her will. Mr. Lyons inquired why Mrs. Ewan wanted to see him and when informed he said, "Well, I can't come over today. I am busy. You tell your Aunt Kate if she wants to change her will, just to write it out the way she wants it and be sure she has the date on it and have her sign it." When told what Mr. Lyons stated, Mrs. Ewan said, "Florence, I want you to go by and see Mr. Lyons. You tell him that I want him to make out my will putting your name in; I am leaving everything to you." Mrs. Talley went to see Mr. Lyons stating to him that Mrs. Ewan wanted to make a will by which she left everything to Mrs. Talley. Mr. Lyons then prepared a form of will which he handed to Mrs. Talley stating, "Tell your Aunt Kate, if she wants to leave everything to you, if she will just copy this will it will be sufficient." Mrs. Talley then took the form of will to Mrs. Ewan and told her, "Mr. Lyons said this is what you want, copy it." Mrs. Ewan then copied the document, signed and dated it.

April 10, 1943, Mr. Lyons talked with Mrs. Ewan in private, during which conversation decedent showed him the holographic will which she had executed. He thereupon made the following notation on the copy of the holographic will that he had given to Mrs. Talley, "I visited Mrs. Ewan at the hospital, 4/10/43, Florence Talley and two nurses were there, Mrs. Ewan wants Rose Miller to have house for life and then it should go to Wendell Miller."

On April 5, 1943, Mrs. Talley did not telephone any of the brothers or sisters of Mrs. Ewan relative to her aunt's illness. On April 6, 1943, Mrs. Talley informed Mrs. Ewan's brothers and sisters of her aunt's condition and told them

that the doctor had said "no visitors," and on subsequent occasions she told them that Mrs. Ewan was full of dope and would not recognize them and that there were to be no visitors. Mrs. Talley was present at all times that the brothers and sisters of Mrs. Ewan visited her while she was in the hospital and in a rest home.

Mrs. Poulton testified relative to Mrs. Ewan thus:

"Well, when I die, I never want to be in a hospital, I never want to be in a hospital when I make a Will because she wasn't in the state of mind to make a Will."

Decedent on one occasion said:

"I have a crippled relative and that is who I made it out to and I have a house in town and I want my sister to have that," and on another occasion she said:

"She pays me a little now and then when she has the money, but if she hasn't the money, that is all right and when I die, she will get it."

The fact is she did not own the property referred to but was the holder of a mortgage which was a lien on the property mentioned.

As to the first and second questioned findings the evidence is totally devoid of any fact which would show, or which would support, an inference that the testatrix at the time she executed her will was not of sound and disposing mind and memory, or was acting under undue influence of Mrs. Talley.

Respondents contend that where it is shown that the proponent of a will (a) unduly profits by it, (b) sustains a confidential relationship to the testator, and (c) actively participates in procuring the execution of the will, the burden is shifted to the proponent to show that he did not use undue influence, citing *Estate of Johnson*, 31 Cal.App.2d 251, 257 [87 P.2d 900]. The presumption therein referred to is not operative here. Proponent was not active in *procuring* the execution of decedent's will. She merely followed her aunt's instructions in calling on the lawyer and in conveying the latter's message to the testatrix.

As to the third finding of fact, such finding finds absolutely no support in the evidence. The testimony discloses that the will was written entirely in decedent's handwriting, was signed, and dated by her. Particularly is such finding erroneous in view of the fact that contestants at the time

of the trial, and before the case was submitted to the court for decision, expressly abandoned as a ground of contest the issue that the holographic will of decedent was not executed in the manner and form required by law.

For the foregoing reasons the judgment is reversed.

Moore, P. J., and Wood (W. J.), J., concurred.