[Civ. No. 47574. First Dist., Div. Four. Mar. 10, 1980.]

JUANITA T. ANDERSON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF INDUSTRIAL RELATIONS,
Real Party in Interest and Respondent.

COUNSEL

Helen B. Culiner and Michael P. Riccitiello for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

George Deukmejian, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendant and Respondent and for Real Party in Interest and Respondent.

OPINION

**CHRISTIAN, J.**—Juanita T. Anderson appeals from a judgment denying a writ of mandate (Code Civ. Proc., § 1094.5) to compel the State Personnel Board to vacate its decision upholding an action by the Department of Industrial Relations denying permanent status to appellant, who had been a probationary employee of the department.

Appellant began employment on March 17, 1976, with the Department of Industrial Relations in a probationary status as a fair employment practices consultant, assigned to the Fair Employment Practices Commission (FEPC). Through several performance evaluation reports she was informed that the quantity and quality of her work were below acceptable levels. She was admonished that substantial improvement in her performance was necessary to avoid termination before the end of her probationary period.

On March 15, 1977, the day before the end of her probationary period, appellant was served with a notice of rejection, terminating her

employment as of that date. Appellant instituted an administrative hearing before the State Personnel Board. The board upheld the rejection, and writ review was sought; the superior court also upheld the rejection.

I

■ Appellant asserts that the overwhelming weight of the evidence presented at her hearing demonstrated that she began her employment with the FEPC on March 15, 1976, contrary to the State Personnel Board's finding that she began employment on March 17. Her probationary period extended for one year (Gov. Code, § 19170). A year constitutes 365 days. (Gov. Code, § 6803.) Appellant contends that her probationary period, having commenced on March 15, ended on March 14, 1977, with the result that her notice of rejection was not timely and she passed from probationary to permanent status. (See Gov. Code, § 19173;[1] *Wiles* v. *State Personnel Board* (1942) 19 Cal.2d 344, 352 [121 P.2d 673].)

In support of her contention that she started employment with the FEPC on March 15, appellant cites testimony by herself, her baby-sitter, and an FEPC consultant that she began work on this date. The department's "Personal Chronology of Juanita Anderson," prepared by appellant's supervisor, indicates that appellant started her probationary period on March 15. But contrary evidence supported the State Personnel Board's finding that appellant began her probationary period on March 17, 1976. Appellant's notice of appointment, signed by her, specified March 17 as the effective date of her appointment. Her oath of allegiance was administered and subscribed on March 17. A monthly time report prepared and submitted by her for March 1976 shows March 17 as her first day of work. Appellant alleged at the hearing that she falsified her starting date on her March time report at the direction of her supervisor, but the supervisor denied the allegation and the board found it to be untrue.

---

[1]Government Code section 19173: "A rejection during probationary period is effected by the service upon the probationer of a written notice of rejection which shall include: (a) An effective date for the rejection which shall not be later than the last day of the probationary period; and (b) A statement of the reasons for the rejection. Service of the notice shall be made on or prior to the effective date specified. Within fifteen days after the effective date of the rejection, a copy thereof shall be filed with the board."

Appellant, in effect, asks this court to reweigh evidence presented at the hearing on the issue of her starting date. But substantial evidence supported the board's findings; these findings thus will not be disturbed on appeal. (Code Civ. Proc., § 1094.5; *Berniker* v. *Berniker* (1947) 30 Cal.2d 439, 444 [182 P.2d 557]; *Stadium Concessions, Inc.* v. *City of Los Angeles* (1976) 60 Cal.App.3d 215, 218 [131 Cal.Rptr. 442].)

## II

 Appellant asserts that the notice of rejection was not served on or before the effective date specified in the notice, in violation of Government Code section 19173, which requires the rejection notice to indicate an effective date for the rejection and requires service of the notice "on or prior to the effective date specified."[2] Service is complete on mailing. (Gov. Code, § 18575.)

The notice of rejection stated that it was "effective at the close of business March 15, 1977," and that it was mailed at 8:30 p.m. on March 15, 1977. Appellant contends that because the notice was served at 8:30 p.m. on March 15, service was not completed until after the specified date in the notice, i.e., after the close of business on March 15. The record contains no evidence regarding when the FEPC office finished transacting business on March 15, but Government Code section 11020 provides: "Unless otherwise provided by law, all offices of every state agency shall be kept open for the transaction of business from 8 o'clock a.m. until 5 o'clock p.m. of each day from Monday to Friday . . . ."

Appellant argues that the word "date" encompasses time of day limitations that are contained in a written instrument. She asserts that "date" and "day" are not synonymous and that "date" refers to the particular time of a transaction rather than the calendar day on which it occurs. (See *Kleinschmidt* v. *Hoctor* (1950) 361 Mo. 29, 35 [233 S.W.2d 649, 654].) The theory is that the statutory requirement of service of the rejection notice on or prior to the effective "date" specified, rather than the effective "day" specified, encompassed the "close of business" time deadline specified in appellant's rejection notice, which passed at 5 p.m. on March 15. The board concluded as a matter of law that Government Code section 19173 does not contain any time of day limitation and that appellant was serving on the effective date specified.

---

[2]See footnote 1.

Appellant is correct in asserting that the term "date" may have a time of day limitation. Whether the term carries such a limitation depends on the type and purpose of the source on which the term appears. Several of the cases relied on by appellant are contract cases in which the word "date" was used to refer to a time specified in the contract. (See *Mutual Ins. Co.* v. *Hurni Co.* (1923) 263 U.S. 167, 174 [68 L.Ed. 235, 238, 44 S.Ct. 90, 31 A.L.R. 102]; *Conner* v. *Motors Insurance Corporation* (La.App. 1968) 216 So.2d 555, 557, disapproved on another point in *Ellerson* v. *Scott* (La. 1975) 320 So.2d 527, 529.) Many business transactions require adherence to an exact time schedule and application of a time limitation to the term "date" in business contracts. ■ But rights in the civil service system are governed by statute, not by contract. (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981].)

The statutory language, "'upon a date to be fixed,'" was interpreted in *Allison* v. *Camp Creek Drainage Dist.* (1951) 211 Miss. 354, 362-363 [51 So.2d 743, 746-747], to refer to a full day of 24 hours. In *Allison* the statute required the chancery clerk, after the filing of a report on the development of a drainage district, to fix a date for a hearing and at the time specified to hear all property owners affected. After the filing of a report, the clerk gave notice that a hearing would occur on March 9, 1950, at 10 a.m. Appellants filed a petition against the formation of the district at 1:30 p.m. on March 9, and respondents objected to the late filing. The Supreme Court of Mississippi upheld the trial court's ruling that the time for filing did not expire until 12 midnight on March 9. *Allison* and the instant case are similar; both involve statutory language calling for the setting of a date and notice with the exact date to be specified.

■ A rule interpreting "date" to include a specific time limitation properly applies only to those cases, e.g., contract cases, in which impairment of property or other interests would occur if absolute adherence to the time specification was not achieved. ■ No such impairment can be said to have occurred in the instant case. Appellant suffered no harm or prejudice.

■ The word "date" in its common and accepted statutory meaning refers simply to the day, month and year. (*Estate of Clark* (1942) 55 Cal.App.2d 85, 87 [129 P.2d 969]; *Cole* v. *Board of Supervisors* (1915) 27 Cal.App. 528, 530 [150 P. 784].) ■ Second paragraph, subdivision (a) of Government Code section 19173 reads in part: "An effective

*date* for the rejection...shall not be later than the last *day* of the probationary period...." (Italics added.) Subdivision (b) follows and provides in part: "Service of the notice shall be on or prior to the effective date specified." The terms "date" and "day" are used interchangeably. The wording of subdivision (a) contemplates that the effective date for rejection could encompass the last full day of the probationary period. Subdivision (b) merely adds that service of the notice of rejection must occur at some time on the day on which the rejection is to become effective. Reading both subsections together, section 19173 reveals an intent that the rejected employee be served no later than the last day of the probationary period. Appellant was served on March 15, prior to the final day of her probationary period—March 16—and within the effective date specified on the rejection notice.

III

Appellant contends that the standard of performance used by the FEPC to evaluate her work was arbitrary and capricious because it was a purely quantitative method, in violation of Government Code section 19300.[3] She further contends that her rejection was improper because she was denied credit for a large portion of her completed work.

A rejected probationary employee, after a hearing before the board, may be reinstated only on a showing that there was no substantial evidence to support the rejection; the rejection is presumed to be free from fraud and bad faith. (Gov. Code, § 19175, subd. (c).) ■ Probationary employees have only statutory rights, and have no vested interest in employment. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 782 [97 Cal.Rptr. 657, 489 P.2d 537], cert. den. (1972) 405 U.S. 1030 [31 L.Ed.2d 488, 92 S.Ct. 1301]; *Ball* v. *City Council* (1967) 252 Cal. App.2d 136, 141 [60 Cal.Rptr. 139].)

---

[3]Government Code section 19300: "(a) After consultation with appointing powers and other supervising officials the board shall assist and encourage state agencies to establish standards of performance for each class of position and shall provide a system of performance ratings. Such standards shall insofar as practicable be established on the basis of the quantity and quality of work which the average person thoroughly trained and industriously engaged can turn out in a day.

"(b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

Appellant argues that Government Code section 19300 contemplates a rating system based on quantity and quality. Section 19300 provides that state agencies' employee performance standards "shall insofar as practicable be established on the basis of the quantity and quality of work which the average person thoroughly trained and industriously engaged can turn out in a day." Appellant contends that she was evaluated under a wholly quantitative system and was thus improperly dismissed, and that, as a probationary employee who has been denied permanent status for arbitrary and capricious reasons, she is entitled to reinstatement. (See *Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868 [139 Cal.Rptr. 123].)

Appellant's supervisor applied a point system to her work which required an employee to achieve 135 points per month; points were calculated by multiplying the number of completed complaints by 12, multiplying the number of precomplaints by 3, and then adding these two sums. The State Personnel Board had not approved the standard. A grievance was instituted attacking the use of the rating system, and the chief deputy director of the Department of Industrial Relations ordered that the use of the standard should be discontinued. The executive officer of the Union of State Employees, Local 411, testified that the chief deputy director agreed that employees previously evaluated under the quantitative system should be reevaluated under an alternative method. Appellant contends that her supervisor refused to reevaluate her and discharged her solely for failure to score enough points under the quantitative system.

■ Government Code section 19300 does not mandate board approval of performance standards before an employee may be evaluated for dismissal. The statute "merely provides that the board shall assist and encourage state agencies to establish standards of performance for each class of position. Prior action by the board in the matter of standards is not required as a legal condition for dismissal." (*Sweeney* v. *State Personnel Board* (1966) 245 Cal.App.2d 246, 252 [53 Cal.Rptr. 766].) ■ Assuming that section 19300 requires that any standard which is implemented must evaluate both the quantity and quality of the employee's work, substantial evidence supported the board's finding that "the quantity and quality of her completed work was far below that reasonably expected of a probationary employee as to leave no doubt as to appellant's failure to demonstrate merit, efficiency and fitness in the position of Fair Employment Practices Consultant."

Although appellant's July and November probationary performance reports for 1976 indicate that her work was partially evaluated on the basis of the quantitative system, there was evidence that the quality of appellant's work during this period was deficient. The November 1976 performance report stated in part: "Improvement is needed in 'knowledge' based on the fact that work has been returned to you consistently to be *redone*." The February performance report indicated that appellant's skill level was unacceptable and that she needed improvement in her learning ability, knowledge and work habits. Under "knowledge" on the February report, the entry stated: "Two complaints had to be rejected because of misunderstanding on amending and the practical application of the concept of retaliation. You misinterpreted the Statute of Limitations on four complaints, allowing three to reach a crisis situation. Another report could not be accepted for lack of clarity, which never did come in during this period." Appellant received copies of her performance reports, each of which admonished that her work needed substantial improvement. An area administrator for the FEPC testified that "[t]he quality of her reports weren't of the—such that I felt were adequate of a professional consultant." Appellant's supervisor testified that her performance was the lowest among four consultants whom he supervised. He also testified that he used other objective standards, in addition to the quantitative method, to evaluate appellant's performance.

Appellant again asks this court to reweigh evidence presented at the hearing; in reviewing the sufficiency of evidence to support findings of fact, the court will not reweigh the evidence nor reassess the credibility of witnesses. (*Maynard* v. *State Personnel Bd.* (1977) 67 Cal.App.3d 233, 237 [136 Cal.Rptr. 503].) Substantial evidence supports the board's finding that appellant was evaluated on the basis of the quantity and quality of her work and found deficient in both areas. No fraud or bad faith on the part of appellant's supervisors or the FEPC was demonstrated.

In support of her contention that she did not receive full credit for all the work she completed, appellant cites her own testimony in which she stated that upon review of the FEPC log, she discovered approximately 80 complaints and 117 precomplaints completed by her that she had not properly logged. Her supervisor testified that it was his responsibility to see that control cards used to log completed work had been filled out properly. Appellant argues that through the supervisor's conscious improper use of the control cards she did not receive full credit for all her

completed work, but substantial evidence supported a contrary conclusion. Although the supervisor conceded that failure properly to enter completed work on the control cards might result in lower totals, he testified that he noted nothing improper in the manner in which appellant logged her work: "I said there didn't seem anything improper the way she was handling it. I did indicate there was a change of procedure over a period of time. At one time we were turning in all three yellow cards and I believe that was the case when she first came into the agency. We have a change over a period of time and as I recall I never saw anything inappropriate in what she turned in to me and if anything had been inappropriate, I'm sure it would have been turned back to me by my supervisor."

Appellant again requests this court to reweigh a factual finding made by the board. The board stated that the quantity of appellant's work was far below that reasonably to be expected of a probationary employee. The board stated: "It is clear from the evidence that appellant was just unable to produce anything close to quantity and quality of work reasonably required of a Fair Employment Practices Consultant."

Appellant failed to meet her burden demonstrating that there was insufficient evidence to support the rejection (Gov. Code, § 19175).

Affirmed.

Caldecott, P. J., and Poché, J., concurred.