[Civ. No. 63618. Second Dist., Div. One. Mar. 4, 1982.]

Estate of TRESSIE NICOLETTI, Deceased.
KENNETH CORY, as State Controller, et al., Petitioners and Respondents, v.
PHILIP L. NICOLETTI, Objector and Appellant.

**COUNSEL**

Pier Gherini and John Gherini for Objector and Appellant.

Myron Siedorf, Margaret Groscup, Phyllis Fairbanks and Donald C. McKenzie for Petitioners and Respondents.

Opinion

SPENCER, P. J.—

### Introduction

Appellant Philip L. Nicoletti appeals from an order overruling objections to the report of the inheritance tax referee and thence fixing the amount of inheritance tax.

### Statement of Facts

This case comes before us on an agreed statement on appeal, the pertinent portions of which we summarize below.

Tressie Nicoletti (the decedent) died testate on August 6, 1980, leaving an estate consisting entirely of community property to appellant as her surviving spouse. A community property petition was filed pursuant to Probate Code section 650 on October 27, 1980; in accordance therewith, the trial court subsequently confirmed decedent's community property to appellant.

The amended report of the inheritance tax referee, filed June 15, 1981, reflected a community property estate of $345,317. It was to exclusions and exemptions reflected in this report that appellant objected, contending that no inheritance taxes were owing due to the July 19, 1980, enactment of Assembly Bill No. 2092 and, specifically, Revenue and Taxation Code section 13805 contained therein. After consideration of the matter, the probate court entered the following order: "It is the Courts [*sic*] decision that the operating date for the computation of inheritance tax pursuant to Assembly Bill 2092 is as stated in said bill, to wit, the 1st of January, 1981, regardless of any expression in said bill in regard to its effective date."

### Contentions

#### I

Appellant contends that the application of a January 1, 1981 operative date to Revenue and Taxation Code section 13805 and similar substantive provisions of Assembly Bill No. 2092, enacted on July 19, 1980, violates the mandate of article IV, section 8, subdivision (c)(2) of

the California Constitution and the rule enunciated in *Estate of Stanford* (1899) 126 Cal. 112 [54 P. 259, 58 P. 462] that the Legislature may not constitutionally impair inheritance tax rights vested on the date of death under the law then in effect.

## II

Appellant further asserts that the repeal of Revenue and Taxation Code section 13551 evinces a legislative intent that section 13805 have immediate operation in that the application of the January 1, 1981, operative date would leave a void in the taxation of spousal transfers.

## III

Finally, appellant avers that the application of a January 1, 1981, operative date to section 13805 and similar substantive provisions of Assembly Bill No. 2092 violates the equal protection clauses of the Fourteenth Amendment and the California Constitution.

DISCUSSION

I

■ We perceive no merit in appellant's contention that the application of a January 1, 1981, operative date to Revenue and Taxation Code section 13805 (Stats. 1980, ch. 634, § 15)[1] violates article IV, section 8, subdivision (c)(2) of the California Constitution and the *Estate of Stanford* rule.

Section 46 of Assembly Bill No. 2092 provides: "This act provides for a tax levy within the meaning of Article IV of the Constitution and shall go into immediate effect. However, the provisions of this act with respect to the computation of inheritance taxes shall apply only to the estates of decedents dying on or after January 1, 1981, and with respect to the computation of gift taxes, shall apply only to gifts made on or after January 1, 1981. All other provisions of this act relating to pro-

---

[1]Revenue and Taxation Code section 13805 provides: "None of the property transferred to the spouse of the decedent is subject to this part, except that if a limited power of appointment over any portion or all of the decedent's property is given to the spouse of the decedent, the value of such property is subject to this part; provided, however, that the value of any interest, other than the power itself, given to the spouse of the decedent in such property is not subject to this part."

bate procedure and tax administration and collection, shall apply to all estates, effective January 1, 1981." It is this provision which appellant challenges as violating the mandatory language of section 8, subdivision (c)(2) of article IV.[2] The language of subdivision (c)(1) is no less mandatory in operation than the language of subdivision (c)(2). Therefore, were we to adopt appellant's viewpoint, *no* statute could establish an operative date different from the effective date. Yet the rule is settled to the contrary. (*People v. Henderson* (1980) 107 Cal.App.3d 475, 488 [166 Cal.Rptr. 20]; *Callahan v. City & County of S.F.* (1945) 68 Cal.App.2d 286, 290 [156 P.2d 479].)

*People v. Henderson, supra,* 107 Cal.App.3d 475 clarifies the distinction between effective dates and operative dates: "An enactment is a law on its effective date only in the sense that it cannot be changed except by legislative process; the rights of individuals under its provisions are not substantially affected until the provision operates as law." (*Id.,* at p. 488.) Hence it may be seen that subdivision (c) imposes no greater barrier to a postponed operative date in the case of a tax levy than in the case of any other type of statute. Moreover, the Legislature has demonstrated cognizance of this principle on numerous occasions. (See Rev. & Tax. Code, § 6051 [amended Stats. 1973, ch. 296, § 10]; §§ 12202, 17316 and 17327.) Accordingly, it is unequivocally clear that although Assembly Bill No. 2092 took effect on July 19, 1980, as a tax levy, the Legislature had the power to delay substantive application until January 1, 1981.

Appellant's reliance on *Estate of Stanford, supra,* 126 Cal. 112 is misplaced. As noted in *Estate of Cooke* (1976) 57 Cal.App.3d 595 [129 Cal.Rptr. 354], *Stanford* enunciated the principle that "inheritance taxes are vested and determined in accordance with the law in effect on the date of transfer or death and that rights so fixed cannot be surrendered, diminished or impaired by subsequent action of the Legislature . . . ." (*Id.,* at p. 602.) *Stanford* and its successors all involved attempts to retroactively apply new enactments or amendments to rights vested un-

---

[2]Article IV, section 8, subdivision (c) reads in its entirety: "(1) Except as provided in paragraph (2) of this subdivision, a statute enacted at a regular session shall go into effect on January 1 next following a 90 day period from the date of enactment of the statute and a statute enacted at a special session shall go into effect on the 91st day after adjournment of the special session at which the bill passed.

"(2) Statutes calling elections, statutes providing for tax levies or appropriations for the usual current expenses of the State, and urgency statutes shall go into effect immediately upon their enactment."

der prior law. (See also *Estate of Skinker* (1956) 47 Cal.2d 290 [303 P.2d 745, 62 A.L.R.2d 1137]; *Estate of Martin* (1908) 153 Cal. 225 [94 P. 1053]; *Trippet v. State* (1906) 149 Cal. 521 [86 P. 1084]; *Estate of Beville* (1944) 66 Cal.App.2d 271 [152 P.2d 229].) In no instance was the distinction between a statute's effective date and a prospective operative date at issue or discussed.

Nevertheless, appellant interprets the language of *Stanford* as referring to the effective date of a statute, relying on a line of authority which holds that rights in a retirement system established by county ordinance vested on the effective date of the legislation. (*Ross v. Board of Retirement* (1949) 92 Cal.App.2d 188, 193 [206 P.2d 903]; *Thurston v. County of Los Angeles* (1953) 117 Cal.App.2d 618, 621 [256 P.2d 588]; *Wilson v. Board of Retirement* (1957) 156 Cal.App.2d 195, 205 [319 P.2d 426].) We note, however, that *Ross* and its progeny do not purport to establish a blanket rule that the effective date is always controlling with respect to the vesting of rights under new legislation. In each instance, the court was concerned with promoting the legislative intent of the underlying state statute. As discussed, *infra*, the same concern motivates us to conclude that *Ross* and its progeny are not dispositive of the instant issue. (Cf. *People v. Hinojosa* (1980) 103 Cal.App.3d 57 [162 Cal.Rptr. 793].) In view of the general principle that "the rights of individuals under [a statute's] provisions are not substantially affected until the provision operates as law" (*People v. Henderson, supra*, 107 Cal.App.3d 475, 488), a more reasonable construction of the language of *Stanford* and its progeny is that inheritance taxes vest under the law then in operation. Hence we perceive no inherent conflict between the *Stanford* rule and the application of the prospective operative date of January 1, 1981, to Revenue and Taxation Code section 13805.

Finally, to construe section 46, Assembly Bill No. 2092 in any manner other than as applying section 13805 and similar substantive provisions only to those decedents dying on or after January 1, 1981, would contravene the clear legislative intent. First, Assembly Bill No. 2092 contains no provisions affecting chapter 2 of the Revenue and Taxation Code, entitled "Imposition and Computation of Inheritance Tax" (Rev. & Tax. Code, §§ 13401-13442), but it contains provisions defining transfers not subject to taxation, establishing criteria for valuation and exempting transfers from taxation. Such provisions necessarily have an impact on the computation of inheritance taxes; one must first determine a method of valuation and apply exclusions or exemp-

tions in order to fix the amount of tax due on the remaining estate, if any. Construction of the pertinent language in section 46 as applying to such substantive provisions is favored, for any other construction would render the language superfluous; such a construction is to be avoided. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

Second, a perusal of the amended versions of the bill, from its genesis to its passage, reveals a consistent intent that the act apply only to persons dying or gifts made after December 31, 1980. The March 19, 1980, Assembly amendment contained section 27, which read in part: "[T]he provisions of this act shall apply to the transfer of the California taxable estate of any decedent ... dying after December 31, 1980 ...." The May 5, 1980, Assembly amendment deleted section 27 and added section 32 which read in part: "However, the provisions of this act shall apply in the computation of inheritance taxes with respect to the estates of decedents dying on and after January 1, 1981 ...." Although the section number changed in the course of subsequent amendments, the language remained the same until the June 26, 1980, Senate amendment when the present language was adopted. In substance, this last amendment evinces no change in legislative intent, but simply a belated recognition that the administrative provisions of the act should apply to all estates effective January 1, 1981.

Moreover, the Legislative Counsel's Digest reiterates the intent of the Legislature: "This bill would take effect immediately as a tax levy and shall apply in the computation of inheritance and gift taxes with respect to ... deaths occurring on and after January 1, 1981." (Legis. Counsel's Dig. of Assem. Bill No. 2092, 4 Stats. 1980 (Reg. Sess.) Summary Dig., p. 173.)

Third, the clear language of section 46 expresses the intent that all nonadministrative provisions of the act shall apply only to persons dying on or after January 1, 1981. The last sentence states that "all other provisions of this act ... shall apply to all estates, effective January 1, 1981." The qualifying phrase "relating to probate procedure and tax administration and collection" is used parenthetically to indicate the nature of "all other provisions." In the absence of constitutional infirmity, the unequivocal expression of legislative intent requires application of the substantive provisions of Assembly Bill No. 2092, including section 13805, only to the estates of decedents dying on or after January 1, 1981.

## II

There is no greater merit to appellant's assertion that the repeal of Revenue and Taxation Code section 13551 (Stats. 1980, ch. 634, § 3) evinces a legislative intent that section 13805 have immediate operation in that the application of the January 1, 1981, operative date would leave a void in the taxation of spousal transfers. On one hand, the clear import of the language in section 46, Assembly Bill No. 2092, that all nonadministrative provisions of the act shall apply only to the estates of persons dying or to gifts made on or after January 1, 1981, may be read as meaning that the repeal of nonadministrative provisions also shall apply only to those circumstances.

On the other hand, were we to assume that section 13551 was repealed effective July 19, 1980, the state would not be without a means of taxing spousal transfers upon death. Before its repeal, section 13551 simply recognized the nature of each spouse's undivided one-half interest in community property, declaring the decedent's interest subject to taxation and that of the surviving spouse excluded therefrom. In reality, the section was redundant. Revenue and Taxation Code section 13601 provides: "A transfer by will or by laws of succession is subject to [taxation under] this part." A surviving spouse's acquisition of the decedent's one-half interest in community property is a transfer within the meaning of section 13601. Further, inasmuch as the 1980 amendment to section 13801 (Stats. 1980, ch. 634, § 11), establishing exemptions for class A transferees, has the same operative date as section 13805, the spousal exemption provided prior to amendment remains available to the estates of persons dying prior to January 1, 1981. Hence it is clear that no vacuum exists from which one might infer a legislative intent that section 13805 have immediate operation.

## III

■ Appellant's equal protection argument borders on the frivolous, based as it is on the erroneous assumption that the effective date of Assembly Bill No. 2092 has some sort of independent vitality with respect to the rights of individuals under the act. The estates of those persons dying after July 19, 1980, but before January 1, 1981, are treated the same as those of persons dying prior to July 19, 1980.

Appellant argues, nevertheless, that any taxes due on the estates of post-July 19 and pre-January 1 decedents, like those due on the estates

of post-January 1 decedents, will not be delinquent until after January 1, 1981 (Rev. & Tax. Code, § 14103); therefore, it is inequitable to discriminate between the two groups of estates. We do not consider the tax delinquency date dispositive of the issue. Revenue and Taxation Code section 14102 provides that inheritance taxes are "due and payable at the date of the transferor's death." Using the date of death as the line of demarcation, pre-January 1 estates are *not* "similarly situated" with post-January 1 estates. "'[The Constitution] does not forbid ... statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.'" (*Califano* v. *Webster* (1977) 430 U.S. 313, 321 [51 L.Ed.2d 360, 367, 97 S.Ct. 1192], quoting from *Sperry & Hutchinson Co.* v. *Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 562, 31 S.Ct. 490].) In establishing an operative date of January 1, 1981, the Legislature has done nothing but that which is constitutionally permissible.

The order is affirmed.

Lillie, J., and Dalsimer, J., concurred.

A petition for a rehearing was denied April 1, 1982, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1982.