[No. AO23609. First Dist., Div. Five. Mar. 19, 1984.]

Estate of JESSIE CIRONE, Deceased.
KENNETH CORY, as Controller, etc., Petitioner and Appellant, v.
BENNIE CIRONE et al., as Executors, etc., Objectors and Respondents.

**COUNSEL**

Myron Siedorf and John D. Schell for Petitioner and Appellant.

Bertram M. Berns and Howard C. Anawalt for Objectors and Respondents.

**OPINION**

**KING, J.**—In this case we hold that an initiative measure repealing the state inheritance tax, stating it is "operative as of the date of passage" and "shall apply to the estates of those persons dying on or after such date," precludes the imposition of inheritance taxes against the estate of persons dying on the date of the election at which the initiative measure was enacted by the electorate. This result does not violate the prohibition against a gift of public funds contained in section 6 of article XVI of the California Constitution.

Jesse Cirone died at about 2 p.m. on June 8, 1982. The inheritance tax referee appointed by the probate court reported that Cirone's estate owed a tax of $70,108. The executors of the estate objected on the ground that the passage of Proposition 6 on June 8, 1982, repealed the state inheritance tax from the beginning of that day. The court sustained the objection, and the state has appealed. We affirm the judgment.

Proposition 6 is an initiative statute which repealed the state inheritance and gift tax and added a new section to the Revenue and Taxation Code banning the state from imposing any inheritance or gift tax. It was passed by the electorate on June 8, 1982; the polls closed at 8 p.m. that day.[1] Section 4 of Proposition 6 provides that it is operative as of the date of its passage, and that it applies to the estates of persons dying "on or after such date."[2] The issue before us is whether this language makes Proposition 6 applicable to the estates of persons dying on the entire *day* of its passage.

 The fundamental rule of statutory construction is that a law should be construed to effectuate its purpose. (*Moyer* v. *Workmen's Compensation Appeals Board* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The language of the statute is the prime indicator of such purpose, and should generally be interpreted according to its "usual, ordinary import." (*Ibid.*) Ballot arguments and analyses accompanying an initiative are helpful, though not conclusive evidence of the meaning of unclear language. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 330 [182 Cal.Rptr. 506, 644 P.2d 192].)

 The language of Proposition 6 indicates that it became operative from the day of its passage on June 8, 1982. Although "date" may refer either to calendar day or to a precise moment, the first usage appears more common. Three of the four relevant definitions of date in The American Heritage Dictionary (2d college ed. 1982) refer to calendar day, and the fourth definition is not inconsistent with this interpretation.[3] One appellate court recently noted that "[t]he word 'date' in its common and accepted statutory meaning refers simply to the day, month, and year." (*Anderson* v. *State Personnel Board* (1980) 103 Cal.App.3d 242, 248 [162 Cal.Rptr.

---

[1]The electorate also approved Proposition 5, a measure similar to Proposition 6 but which repealed the inheritance and gift tax retroactively from January 1, 1981. Proposition 5 has been held to be inoperative because Proposition 6 received more votes. (*Estate of Gibson* (1983) 139 Cal.App.3d 733 [189 Cal.Rptr. 201].)

[2]Section 4 reads in full: "This act shall become operative as of the date of passage hereof, and shall apply to the estates of those persons dying on or after such date, to transfers occurring by reason of a death occurring on or after such date, and to gifts made or completed on or after such date. Any liability for inheritance or gift tax incurred prior to such date shall be determined and enforced under the applicable law in effect on the date of death or date of completed transfer as fully and to the same extent as if the repeals of Parts 8 and 9 of Division 2 of the Revenue and Taxation Code had not been made."

[3]These definitions are: "1a. Time stated in terms of the day, month, and year. b. a statement of calendar time, such as on a document. 2. The day of the month. 3. A particular point *or period of time* at which something happened or existed or is to happen." (Italics added.) Appellant claims that date refers to calendar day only in regard to an inscription on a writing, and denotes a particular point of time in regard to an event, citing Webster's Second New International Dictionary (1961, unabridged). The claim is at odds with common usage: the typical response to the question of what date an event happened would be in terms of day, month, and year, rather than a more specific moment.

865]; see also *Estate of Clark* (1942) 55 Cal.App.2d 85, 87 [129 P.2d 969] [date means day, month, and year in regard to dating a will]; *Cole* v. *Board of Supervisors* (1915) 27 Cal.App. 528, 530 [150 P. 784] [date means day, month, year in regard to a requirement that the date of an event be published].) The court in *Anderson* acknowledged that a few cases interpreted date as denoting a specific time, but distinguished those cases as involving a contractually specified time where failure to observe that specification would impair property interests. (103 Cal.App.3d at p. 248.) Proposition 6 does not affect contractual interests and, as demonstrated below, applying Proposition 6 for the entire day of June 8 will not impair legally protected state property rights. Therefore, "date of passage" should be given its ordinary meaning as the day—rather than the moment—when Proposition 6 was passed.[4]

The purpose of Proposition 6 reinforces the conclusion that it repealed the inheritance tax from the beginning of June 8, 1982. The ballot argument in favor of Proposition 6 makes clear that the measure is intended to repeal the inheritance tax as soon as constitutionally permissible. After characterizing the inheritance tax as a "cruel and unfair tax" which should be "abolished," the proponents conclude: "Since Proposition 6 is carefully written to withstand challenges in the courts and to block legislative shenanigans to reimpose the tax under another name, it is vital that Proposition 6 be passed. It will take effect *immediately*." (Ballot argument in favor of Prop. 6, attached as appendix to this memorandum [italics added].) Although the voters may have had various motives for opposing the inheritance tax, it is apparent from the passage of Proposition 6 that they had concluded that the tax should be eliminated. Construing Proposition 6 to repeal the tax for the entire day of June 8, 1982, is more consistent with this intent than delaying the repeal until some later time.[5]

The state argues that even if date does refer to day, we should examine the precise time of passage in accordance with the rule of *People* v. *Clark* (1851) 1 Cal. 406, 408, that a court may fractionalize a day into smaller units when necessary to determine the order of successive events. (See also *E.M. Derby & Co.* v. *City of Modesto* (1894) 104 Cal. 515, 522 [38 P. 900] [stating this rule but declining to fractionalize "day" under the circumstan-

---

[4]This construction is also supported by the provision in Proposition 6 that it applies to the estates of persons dying "on or after" its date of passage, since "on" ordinarily precedes "day" rather than "moment."

[5]The Legislative Analyst's summary of Proposition 6 did state parenthetically that the effective date of the measure was the day after the election. This statement, however, is contradicted by the ballot argument in favor of Proposition 6, and appears to be based on an incorrect conclusion that an earlier effective date would be unconstitutional. Thus, this statement is not inconsistent with a primary purpose of abolishing the inheritance tax as soon as constitutionally permissible.

ces presented].) *Clark* involved a law changing a state judgeship from an elected to an appointed position, which was signed by the Governor on the same day that a judge was elected. The law did not specify an effective date, and the state Constitution apparently did not cover this issue; therefore, the court relied on the common law rule that a law becomes effective from the moment of its approval, and remanded for determination of whether the Governor signed the law before or after the voting had terminated. (*Id.*, 1 Cal. at pp. 407-408; see also *Davis* v. *Whidden* (1897) 117 Cal. 618, 622-623 [49 P. 766] [holding the later of two conflicting laws passed the same day to override the law passed earlier that day].)

The state's reliance on *People* v. *Clark* is misplaced. The court in *Clark* found that the law was effective from its moment of approval only because the law failed to specify an effective date; in contrast, Proposition 6 expressly stated that it became operative as of the "date of its passage." *People* v. *Clark, Derby* v. *City of Modesto,* and *Davis* v. *Whidden* did not address the issue of whether "date" refers to day or moment, and nothing in these cases precludes interpreting Proposition 6 as operative from the beginning of the day of its passage. Accordingly, this court should give effect to the ordinary meaning of "date," the meaning the electorate undoubtedly understood in enacting the initiative, and to its purpose of repealing the inheritance tax as soon as possible by construing Proposition 6 as operative from the beginning of June 8, 1982.[6]

■ Section 6 of article XVI of the California Constitution prohibits the Legislature from making or authorizing the making of a gift of public funds.[7] A substantially identical provision formerly contained in article IV has been interpreted as precluding the Legislature from retroactively reducing inheritance tax arising from previous deaths because the state's right to such tax vests on the date of death. (*Estate of Skinker* (1956) 47 Cal.2d 290, 296 [303 P.2d 745, 62 A.L.R.2d 1137]; *Estate of Stanford* (1899) 126

---

[6]The state also claims that "date of passage" should be construed not as the day of approval by the electorate, but as the day the law became effective under article II, section 10, subdivision (a), of the state Constitution, which was the day after the election. We reject this reading of "passage" because it strains ordinary usage and would frustrate, rather than effectuate, the purpose of Proposition 6. Further, as demonstrated below, article II, section 10, subdivision (a), is not controlling.

[7]Article XVI, section 6, provides in relevant part: "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal, or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever. . . ."

Cal. 112, 117-121 [58 P. 462]; *Estate of Cooke* (1976) 57 Cal.App.3d 595, 602-605 [129 Cal.Rptr. 354]; see former Cal. Rev. & Tax Code, § 14102 ["Every tax imposed by this part is due and payable at the date of the transferor's death."] (repealed by Prop. 6).) The state argues that article XVI, section 6, also applies to initiative statutes, citing *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 674-675 [194 Cal.Rptr. 781, 669 P.2d 17], and *Fair Political Practices Com.* v. *State Personnel Bd.* (1978) 77 Cal.App.3d 52, 56 [143 Cal.Rptr. 393], for the proposition that laws enacted by the electorate are equally subject to constitutional restraints as are laws passed by the Legislature. It contends Proposition 6 could not have repealed the inheritance tax for the entire day of June 8 since that would involve an unconstitutional gift of taxes which vested upon deaths occurring on that day before the passage of Proposition 6.

It is, of course, true that an initiative statute cannot violate the Constitution. This general principle, however, does not answer the question of whether article XVI, section 6, applies to the electorate as well as to the Legislature. *Estate of Skinker, Estate of Stanford,* and *Estate of Cooke* are not controlling because they apply the prohibition against gifts of public funds to laws passed by the Legislature, and not to initiative statutes. Nor do *Legislature* v. *Deukmejian* or *Fair Political Practices Com.* v. *State Personnel Bd.* resolve this issue since they involve construction of materially different constitutional provisions. In *Legislature* v. *Deukmejian* our Supreme Court held that "A statutory initiative is subject to the same state and federal constitutional limitations as are the Legislature and the statutes which it enacts." (34 Cal.3d at p. 674.) In *Fair Political Practices Com.* v. *State Personnel Bd.,* the court held that an initiative statute could not override the constitutional vesting of exclusive power to enforce civil service statutes in the State Personnel Board. (77 Cal.App.3d at p. 56.) These cases are not controlling because the constitutional provisions construed made no distinction between legislative laws and initiative statutes, in contrast to the reference in article XVI, section 6, to its specific application to the "Legislature."

The express language of article XVI, section 6, limits its scope to the Legislature, and nothing in this section or elsewhere in the Constitution requires stretching the term "Legislature" to include the electorate. To the contrary, the Constitution consistently distinguishes between the Legislature as a body of representatives elected to the Senate and the Assembly, and the people as the voters who elect the representatives and are the ultimate source of constitutional power. (See, e.g., Cal. Const., art. IV, § 1 ["The legislative power of this State is vested in the California Legislature which consists of the Senate and the Assembly, but the people reserve to themselves the powers of initiative and referendum."].) ■ Further, it is well

established that the initiative power must be liberally construed, and that reasonable doubts should be resolved in favor of the exercise of this power. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 248 [149 Cal.Rptr. 239, 583 P.2d 1281].) ■ Thus, any doubt as to the operability of Proposition 6 should be resolved by holding there is no restriction on the power of the electorate to make its repeal of the inheritance tax applicable to the estates of those dying on the day of the enactment of the initiative.

Judicial construction of article XVI, section 6, reinforces the conclusion that this section does not apply to initiatives. Courts have repeatedly held the prohibition against gifts or public funds to restrict only the power of the Legislature, and not of independent bodies such as a charter city or county whose authority derives directly from the state Constitution. (*Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 197 [272 P.2d 757]; *Los Angeles Gas & Elec. Corp.* v. *Los Angeles* (1922) 188 Cal. 307, 317 [205 P. 125]; *Social Workers Union Local 535* v. *County of Los Angeles* (1969) 270 Cal.App.2d 65, 78 [75 Cal.Rptr. 566].) The initiative power is directly reserved to the electorate by the Constitution, and is in no way dependent upon the Legislature. (Cal. Const., art. IV, § 1; see also *Carlson* v. *Cory* (1983) 139 Cal.App.3d 724, 728 [189 Cal.Rptr. 185] ["the power of the initiative is the separate and distinct power of the people to legislate . . . . *This reservation of power by the people is, in the sense that it gives them the final legislative word, a limitation upon the power of the Legislature.*"].) Accordingly, construing Proposition 6 to repeal the inheritance tax for the entire day of June 8 cannot violate article XVI, section 6, since that provision does not apply to initiative statutes.

■ Section 10, subdivision (a), of article II of the California Constitution provides: "An initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise." While acknowledging that Proposition 6 expressly stated that it would be operative on the date of its passage, the state nevertheless claims that section 10, subdivision (a), requires delaying the inheritance tax repeal until the beginning of the day after Proposition 6 was passed. It relies upon the distinction made in *Estate of Nicoletti* (1982) 129 Cal.App.3d 475, 479 [181 Cal.Rptr. 137] between effective date as the time when a measure becomes law, and operative date as the time when the law begins to affect the rights of individuals. The state claims that the operative date provision of Proposition 6 did not override the effective date provision of section 10, subdivision (a); therefore, the initiative did not become law until June 9, 1982, and could not have been operative on June 8.

This argument has two defects. First, even if Proposition 6 did not become law until June 9, there is no apparent constitutional bar to a retroactive

repeal of the inheritance tax from June 8. A retroactive law which has an operative date prior to its effective date is not inherently unconstitutional. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].) As noted above, a retroactive repeal does not violate the constitutional prohibition against gifts of public funds. ██ ██ Further, although laws are not retroactively applied unless necessary to effectuate their purpose (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176-177 [18 Cal.Rptr. 369, 367 P.2d 865]), retroactive application does appear necessary to implement the express provision that Proposition 6 operate "as of the date of its passage," as well as to achieve the purpose of repealing the inheritance tax as soon as possible.

Second, assuming that an effective date of June 9 would somehow preclude an operative date of June 8, then the language and purpose of Proposition 6 require that it be construed as both operative and effective on June 8. The court in *Estate of Nicoletti, supra,* 129 Cal.App.3d 475, made clear that the distinction between operative and effective date is not rigid, but should be liberally construed to achieve the purpose of the law involved. The appellant in that case argued that an inheritance tax repeal enacted on July 19, 1980, was applicable to the estate of a decedent dying on August 6, 1980, even though the law stated that it applied only to decedents dying on or after January 1, 1981. The appellant claimed that a January 1 operative date would violate the rule of *Estate of Stanford,* that inheritance taxes are determined under "the law in effect" on the date of death. (*Estate of Nicoletti, supra,* 129 Cal.App.3d at p. 479; quoting *Estate of Cooke, supra,* 57 Cal.App.3d. at p. 602.) The court construed this rule as requiring determination of taxes under the law in *operation* on the date of death, rather than the law in effect, because this interpretation was more consistent with the underlying rationale of *Estate of Stanford.* (*Estate of Nicoletti, supra,* 129 Cal.App.3d. at p. 480.) The court concluded that the repeal applied only to decedents dying on or after January 1, 1981, because a contrary construction would contravene the clear legislative intent and would render superfluous the express provision of operative date. (*Id.,* at pp. 480-481.)

Finally, section 10, subdivision (a), of article II of the California Constitution specifically provides it is inapplicable when the initiative measure provides when it takes effect.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied April 10, 1984, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1984.

APPENDIX

 Gift and Inheritance Taxes (Proponent Rogers) — Initiative Statute

## Argument in Favor of Proposition 6

Your vote for Proposition 6 will abolish the inheritance tax—the most cruel and unfair tax of all. Fourteen states have already repealed theirs.

The inheritance tax is based on the repulsive assumption that people have no right to inherit and government should tax inheritances to "redistribute the wealth." Today, the inheritance tax forces family farms and businesses to be sold to pay the tax.

A middle-income family, already strapped to pay attorney's fees, burial costs, tax preparer's and tax referee's fees, has difficulty coming up with the cash to pay the state. Most properties and assets confiscated by the inheritance tax have been fully taxed already. Children are robbed of their inheritance. Middle-income Californians helplessly watch the family home, family business, family farm or ranch forced onto the auction block. Some of our privately owned, affordable housing is vanishing due to this tax. Small businesses lose working capital that creates jobs and allows business expansion. Family savings are withdrawn to pay the inheritance tax, which reduces banks' funds for home loans.

Abolishing the inheritance tax will improve the economy, and jobs will be created. People will get off unemployment and welfare and begin earning wages. The state will collect income and sales taxes from them. The inheritance tax provides roughly 2 percent of state taxes. This minor revenue loss will be made up by taxes paid by these new workers.

An Assembly committee refused to repeal this tax. Instead, the Legislature passed a measure in 1980 which they claim is a major reform. That "reform" simply repealed the inheritance tax on properties left by one spouse to another; but joint assets held by man and wife should never have been considered an "inheritance." Furthermore, within an average of eight years, the surviving spouse dies and the inheritance tax takes its toll anyhow.

Proposition 5 is a similar measure with wording which may create many problems only resolved by lengthy court proceedings. While waiting for a court decision, the citizens of California would continue for years to suffer the effects of this death tax.

Proposition 5 is okay as far as it goes; but it only repeals the inheritance and gift taxes. Proposition 6 is far superior because it not only repeals the inheritance and gift taxes, but also prohibits their reenactment under a different name, such as a tax on transfers, succession, legacy, estate or any other tax due to a transfer of property because someone dies. Both propositions can be passed without either hurting the other. Since Proposition 6 is carefully written to withstand challenges in the courts and to block legislative shenanigans to reimpose the tax under another name, it is vital that Proposition 6 be passed. It will take effect immediately. This double and triple taxation can never be reinstated by a greedy government.

Proponents include the California Farm Bureau, California Chamber of Commerce, California Association of Life Underwriters, and many others.

**DON ROGERS**
*Member of the Assembly, 33rd District*

**ALFRED E. ALQUIST**
*State Senator, 11th District*
*Chairman, Senate Finance Committee*

**CAROL HALLETT**
*Member of the Assembly, 29th District*

## Rebuttal to Argument in Favor of Proposition 6

Identical in intent to Proposition 5, this, too, should be rejected.

Claims of forced sales of homes, farms and businesses to satisfy inheritance tax liability do not reflect reality and should fool no one. There are no properties "confiscated" nor children "robbed." Even when there is a tax liability (and most Californians now will never have to pay this tax) the law which took effect last year contains special provisions protecting family homes, farms and businesses. The manner of payment is easier and the time may be extended 10, and even 15, years. This new law has reduced significantly the number of heirs liable for this tax and the amount they pay.

Together, the new federal and state inheritance tax laws have substantially eased the impact on the average family.

These claims of nonexistent hardships are designed to divert attention from the fact that REPEAL OF THE INHERITANCE TAX IS TAX RELIEF FOR THE WEALTHY. Remember, 50 percent of the benefit would go to only 5.7 percent of beneficiaries.

Neither does this proposition have anything to do with solving our problems of unemployment, welfare or housing. It has to do only with providing a tax benefit for the few, paid for by the many.

The inheritance tax is a reasonable tax which increases as the ability to pay increases.

Vote "no" on this tax break for those who need it least. Its cost would be borne by all citizens.

**KENNI FRIEDMAN**
*President, League of Women Voters of California*

**CHRIS ADAMS**
*President, California State PTA*

**THOMAS G. MOORE**
*President, California Gray Panthers*