74 Cal.Rptr.3d 304 (2008)
161 Cal.App.4th 465
ESTATE OF Pierre P. CLAEYSSENS, Deceased.
Noelle Claeyssens Burkey, as Executor, etc., Petitioner and Appellant,
v.
State of California et al., Objectors and Respondents.
No. B197307.
Court of Appeal of California, Second District, Division Six.
March 27, 2008.
*306 John Gherini, San Francisco, for Petitioner and Appellant.
Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior
Assistant Attorney General, Susan K. Leach, Deputy Attorney General, for Objector and Respondent State of California.
Stephen Shane Start, County Counsel, Count of Santa Barbara and Stephen D. Underwood, Chief Assistant County Counsel, for Objector and Respondent County of Santa Barbara.
*305 YEGAN, J.
This appeal is about an estate or inheritance tax masquerading as a graduated probate court user or filing fee (hereafter, the fee). Noelle Claeyssens Burkey, executrix of the Estate of Pierre P. Claeyssens, appeals from an order denying her petition to refund a $74,411.52 fee imposed pursuant to Government Code sections 26827 and 68087. To the extent that these statutes authorize the fee, they were enacted in violation of the state constitution and are of no force or effect. Proposition 6 (Rev. and Tax.Code § 13301), coupled with the California Constitution (art. II, § 10, subd. (c)), provide that the Legislature alone may not impose an estate or inheritance tax. We are compelled to reverse.[1]

Facts
Pierre P. Claeyssens died testate in 2003, naming appellant as the estate executor. Appellant filed a petition to probate the will and for letters testamentary a week later, and paid (under protest) a $29,197 filing fee based on the estate's $15 million estimated value. (Gov.Code, § 26827.) Over the next three years, appellant filed accountings and requested that the probate court review inventories and appraisals on twelve different portions *307 of the estate, including some mineral rights that exceed $20 million in value.
In 2007, appellant filed a Fourth and Final Account and Report which included a request for $240,172.60 attorney fees and $240,172.60 executor fees. In order to close the probate, appellant had to pay an additional $45,445.52 and surcharges based on the estate's adjusted appraised value: $35,657,055.85. (Gov.Code, §§ 26827, 68087; Cal. Rules of Ct., rule 7.552(c).) The total filing fee with surcharges was $74,642.52.
Appellant paid under protest and petitioned for a refund, claiming that the total should be $231. (Cal. Rules of Ct., rule 7.552.) The trial court approved the Fourth and Final Account and approved the petition for settlement and final distribution. It denied the petition to refund the filing fee and surcharge.

Abolition of California Inheritance Tax
"As a general rule, there is no estate tax in California. This policy is set forth in Revenue and Taxation Code section 13301, which provides, `Neither the state nor any political subdivision of the state, shall impose any gift, inheritance, succession, legacy, income, or estate tax ... on the estate or inheritance of any person ... by reason of any transfer occurring by reason of a death.'" (Hoffman v. Connell (1999) 73 Cal.App.4th 1194, 1197, 87 Cal.Rptr.2d 272, fn. omitted.) This statute was added by initiative on June 8, 1982, as Proposition 6. (See Estate of Cirone (1984) 153 Cal.App.3d 199, 203, 200 Cal.Rptr. 511.)
Section 13302, however, provides for a state "pickup" tax. The interaction between section 13302 and federal tax law (26 U.S.C.A. § 2011(a)) works as follows: California "picks up" an estate tax equal to the credit that the federal tax law allows. (Hoffman v. Connell, supra, 73 Cal. App.4th at p. 1198, 87 Cal.Rptr.2d 272.) Because the pickup tax does not place a tax burden on the estate over and above that imposed by the federal estate tax, it is not considered an estate tax. (See Estate of Fasken (1977) 19 Cal.3d 412, 420-421, 138 Cal.Rptr. 276, 563 P.2d 832; 9 Witkin, Summary of Cal. Law, Taxation (10th ed 2005) § 328, pp. 473-474.)
Here the estate paid a $775,817 California "pickup" tax. It also paid $6,192 million in federal estate taxes.

"Transparent Evasion"
Appellant asserts that the $74,411.52 fee is a tax in contravention of Proposition 6. This fee far exceeds typical civil filing fees which are fixed and generally less than $500. Unlike other fees, a graduated fee is based on the appraised value of the estate.
In Fatjo v. Pfister (1897) 117 Cal. 83, 48 P. 1012, our Supreme Court held that an act to impose a graduated fee based on the inventory value of a probate estate was an invalid ad valorem tax. The court stated that the label used to identify the fee was not dispositive. "It is perfectly plain that the legislature has attempted ... to levy a property tax upon all estates of decedents, infants, and incompetents. The ad valorem charge for filing the inventory is in no sense a fee, or compensation for the services of the [court] officer, which are the same, as respects this matter, in every estate, large or small. To call it a fee is a transparent evasion." (Id., at pp. 85-86, 48 P. 1012.)
The Attorney General points out Fatjo v. Pfister, supra, was decided long before the advent of court user fees. Proposition 6, however, provides that: "Neither the state nor any political subdivision of the state shall impose any gift, inheritance, succession, legal, income, or estate tax, or *308 any other tax, on gifts or on the estate of or inheritance of any person or on or by reason of any transfer occurring by reason of a death." (Rev. & Tax.Code, § 13301, emphasis added.)
One might argue that "or any other tax" is limited in scope and refers to the enumerated taxes that precede the phrase (see White v. County of Sacramento (1982) 31 Cal.3d 676, 681, 183 Cal.Rptr. 520, 646 P.2d 191 [discussing last antecedent rule of statutory construction]), but the voters clearly had more in mind. (See Professional Engineers in California Government v. Kempton (2007) 40 Cal.4th 1016, 1040, 56 Cal.Rptr.3d 814, 155 P.3d 226 [ballot summaries and arguments may be considered in determining voters' intent.]) The ballot arguments in favor of Proposition 6 state that "Proposition 6 ... not only repeals the inheritance and gift taxes, but also prohibits their reenactment under a different name, such as a tax on transfers, succession, legacy, estate or any other tax due to a transfer because someone dies...." (Estate of drone, supra, 153 Cal.App.3d at p. 208, 200 Cal.Rptr. 511, emphasis added,)
Our State Constitution provides: "The Legislature ... may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." (Cal. Const., art. II, § 10, subd. (c).) Proposition 6 does not provide for legislative amendment or repeal of Revenue and Taxation Code section 13301 without the approval by voters. Our own California Supreme Court has expressly recognized this constitutional provision. (People v. Cooper (2002) 27 Cal.4th 38, 44, 115 Cal.Rptr.2d 219, 37 P.3d 403; see also Foundation for Taxpayer & Consumer Rights v. Garamendi (2005) 132 Cal. App.4th 1354, 1364, 34 Cal.Rptr.3d 354; Proposition 103 Enforcement Project v. Quackenbush (1998) 64 Cal.App.4th 1473, 1483-1484, 76 Cal.Rptr.2d 342.)
The Attorney General argues that this constitutional provision has no application because the initiative statute, Proposition 6, has not been amended or repealed by the Legislature. It has only enacted a new statute which provides for a new fee. We cannot agree. This myopic view is tantamount to the "transparent evasion" condemned by the California Supreme Court over 100 years ago. "A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]" Franchise Tax Bd. v. Cory (1978) 80 Cal.App.3d 772, 776, 145 Cal.Rptr. 819. "In determining whether a particular action constitutes an amendment, we keep in mind that `[i]t is "`the duty of the courts to jealously guard [the people's initiative and referendum power]' .... `[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right [to local initiative or referendum] be not improperly annulled.'" [Citation]' (DeVita v. County of Napa [1995] 9 Cal.4th [763] at p. 776[, 38 Cal. Rptr.2d 699, 889 P.2d 1019], quoting Associated Home Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) Any doubts should be resolved in favor of the initiative and referendum power, and amendments which may conflict with the subject matter of initiative measures must be accomplished by popular vote, as opposed to legislatively enacted ordinance, where the original initiative does not provide' otherwise. (DeVita v. County of Napa, supra, 9 Cal.4th at p. 792, 38 Cal.Rptr.2d 699, 889 P.2d 1019; Mobilepark West Homeowners Assn. v. Escondido Mobilepark West [1995] 35 Cal. *309 App.4th [32] at p. 41[, 41 Cal.Rptr.2d 393].)"

A Tax For Revenue Purposes
Appellant argues that the fee is a tax and was enacted for revenue purposes. Faced with a budgetary crisis for the 2003-2004 fiscal year, the Legislature anticipated that the trial courts would not receive adequate funding to meet expenditures. (See People v. Alford (2007) 42 Cal.4th 749, 756, 68 Cal.Rptr.3d 310, 171 P.3d 32 [discussing SB 1759]; People v. Wallace (2004) 120 Cal.App.4th 867, 871-874, 16 Cal.Rptr.3d 152 [same].) In 2003, the Legislature budgeted $2.2 billion to operate the trial courts but projected a $150 million budget shortfall. (See Elizabeth G. Hill, Legislative Analyst, California Spending Plan 2003-04, The Budget Act and Related Legislation (October 2003) pp. 48-49.) To meet that shortfall, the Legislature enacted a variety of new fees and court user fees including the graduated probate filing fee. The Legislative Analyst estimated that the graduated probate fee alone would generate $7.3 million for the 2003-2004 fiscal year. (Id., at p. 49.)
The fee was enacted as part of Assembly Bill No. 1759.[2] (People v. Wallace, supra, 120 Cal.App.4th at p. 873, 16 Cal.Rptr.3d 152 [discussing Legislative history of A.B. 1759].) "Assembly Bill No. 1759 was one of 24 trailer bills which were part of a 'mechanism' to implement critical provisions of the fiscal year 2003-2004 state budget. [Citation.] The only expressed rationale for making Assembly Bill No. 1759 an urgency statute was a budgetary reason...." (Id., at p. 875, 16 Cal.Rptr.3d 152.)

Ad Valorem Tax
Here the graduated fee operates as an ad valorem tax because probate is an in rem proceeding in which the court supervises the administration of estate assets. (Estate of Wise (1949) 34 Cal.2d 376, 382, 210 P.2d 497; see David v. Hermann (2005) 129 Cal.App.4th 672, 682, 28 Cal. Rptr.3d 622 [no in rem jurisdiction unless *310 there are estate assets].) The amount of the filing fee is based on the appraised value of the estate assets (i.e., the probate "res") rendering the fee indistinguishable from the ad valorem tax in Fatjo v. Pfister, supra. Until the graduated filing fee and surcharge is paid, and a receipt is presented to the probate court, there is no final distribution. (Cal. Rules of Ct., rule 7.552(b).)

Regulatory Fees and User Fees
Citing Sinclair Paint Co., supra, 15 Cal.4th at page 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350, the Attorney General argues that the word "`tax' has no fixed meaning, and that the distinction between taxes and regulatory fees is frequently 'blurred', taking on different meanings in different contexts. [Citations.]" In Sinclair Paint, manufacturers whose products exposed children to lead contamination were required to pay a fee pursuant to the California Lead Poisoning Prevention Act of 1991 (Health & Saf.Code, § 105275 et seq) to mitigate the cost of adverse health effects caused by their products. (Id., at pp. 869-870, 64 Cal.Rptr.2d 447, 937 P.2d 1350.) Plaintiff, a paint manufacturer, challenged the regulatory fee as a tax. Our Supreme Court held that, in order to prevail, plaintiff would have "to prove at trial that the amount of the fees assessed and paid exceeded the reasonable cost of providing the protective services for which the fees were charged, or that the fees were levied for an unrelated revenue purposes. [Citation.]" (Id., at p. 881, 64 Cal. Rptr.2d 447, 937 P.2d 1350.)
As discussed in Sinclair Paint, "[m]ost taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other government benefits or privileges. [Citations.]" (Id., at p. 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350.) For example, a regulatory fee is not compulsory where the payor chooses to engage in the activity, such as developing property. (See e.g., Russ Bldg. Partnership v. City and County of San Francisco (1987) 199 Cal.App.3d 1496, 1504, 246 Cal.Rptr. 21.)
Unlike a developer fee or the paint manufacturer who decides to sell paint, the probate of the decedent's estate is not an option. Appellant was statutorily required to file a petition for administration of the estate after learning of the testator's death and learning that she was named as executor. (Prob.Code, § 8001.) Although the instant fee is intended to fund the trial courts, the Legislature's "ability to shift the cost of court operations to the parties is limited.... For example, in civil cases litigants properly may be required to pay fixed, incidental court fees that indirectly subsidize a portion of the cost of the judicial system, such as filing fees. [Citations.]" (People v. Superior Court (Laff) (2001) 25 Cal.4th 703, 737, 107 Cal.Rptr.2d 323, 23 P.3d 563.)
Fixed filing fees are entirely appropriate. But the imposition of the instant fee based on the appraised value of an estate is unprecedented and violates Proposition 6 and the California Constitution, article II, section 10, subdivision (c). Calling a $74,642.52 filing fee a "court user fee" does not change the analysis. As reflected in the Proposition 6 ballot arguments, Revenue and Taxation Code section 13301 was "carefully written to withstand challenges in the courts and to block legislative shenanigans to reimpose the [estate or inheritance] tax under another name...." (Estate of Cirone, supra, 1530 Cal.App.3d at p. 208, 200 Cal.Rptr. 511.) This language echoes the words of our Supreme Court 100 years ago in Fatjo v. Pfister, supra, 117 Cal. 83, 48 P. 1012. "To call it a fee is a transparent evasion" of Proposition 6. (Id. at p. 85, 48 P. 1012.)

*311 Conclusion

The judgment (order denying motion to refund probate filing fee and surcharge) is reversed. Appellant is awarded costs on appeal.
We concur: GILBERT, P.J., and COFFEE, J.
NOTES
[1] The question of whether appellant paid a tax or a court user fee is a question of law subject to independent review. (Sinclair Paint Co. v. State Bd. of Equalization (1997) 15 Cal.4th 866, 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350 (Sinclair Paint).)
[2] Government Code section 26827 was enacted in 2003 as part of AB 1759, an urgency statute "necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution. ..." (6 West's Cal. Legislative Service (2003) c. 159, § 29, p. 1525.) On July 1, 2003, Government Code section 26827 provided, in pertinent part: "(a) The total fee for filing the first petition for letters of administration, a petition for special letters of administration, a petition for letters testamentary, or a first account of a testamentary trustee of a trust that is subject to the continuing jurisdiction of the court pursuant to Chapter 4 (commencing with Section 17300) of Part 5 of Division 9 of the Probate Code is, as follows: [¶] ... (9) Three thousand five hundred dollars ($3,500) plus 0.2 percent of the amount over three million five hundred thousand dollars ($3,500,000) for estates of three million five thousand."

In 2005, section 26827 was amended and renumbered as Government Code section 70650. (Stats 2005, c. 75 (A.B. 145)); see 34A West's Ann. California Codes, Gov.Code, § 26827 (2008 Pocket Part, p. 63.)
Government Code section 60807, became effective September 30, 2002, and provided for the following surcharge: "(a) A state surcharge of 10 percent shall be levied on any fee specified in paragraph (1) of subdivision (c) of Section 68085. This surcharge shall be in addition to any court-related fee. (b) The clerk of the court shall cause the amount collected to be transmitted to the Trial Court Trust Fund. [¶] (c) It is the intent of the Legislature that nothing in this section shall change the existing distribution or amounts of the fees specified in paragraph (1) of subdivision (c) of 68085 provided to local jurisdictions and the state."
Section 60807 was repealed effective January 1, 2006 with the enactment of the Uniform Civil Fees and Standard Fee Schedule Act of 2005. (Gov.Code, § 70600; see 5 West's Cal. Legislative Service (2005) c. 75, § 108, p. 1330 (AB 145).)